No. 90-043

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

JOAN C. GAUMER,

       Claimant and Respondent,

  -vs-

MONTANA DEPARTMENT OF HIGHWAYS,

       Employer,

   and

STATE COMPENSATION INSURANCE FUND,

       Defendant and Appellant.

APPEAL FROM:   Workers Compensation Court
               The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

            Leo S. Ward; Browning, Kaleczyc, Berry & Hoven;
            Helena, Montana

       For Respondent:

            Kristine L. Foot; Milodragovich, Dale & Dye,
            Missoula, Montana

Submitted on Briefs:  May 3, 1990

Decided:  June 15, 1990

Filed:

_____
Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

The State Workers' Compensation Insurance Fund (the insurer) as insurer for the Montana Department of Highways appeals the order of the Workers' Compensation Court adopting the findings of fact and conclusions of law of the hearings examiner and entering judgment in favor of the claimant, Joan Gaumer. The Worker's Compensation Court's adoption of findings of fact and conclusions of law involves the construction of recent amendments to the injury statute, § 39-71-119, MCA. The court essentially held that the definition of injury under the amended statute includes aggravation of a pre-existing condition or disease under the specific facts of this case. We affirm.

The insurer raises the following issues on appeal:

(1) Did the Worker's Compensation Court err in determining that the claimant suffered a compensable injury under the newly amended Workers' Compensation Act, § 39-71-119(5), MCA (1987).

(2) Is there substantial credible evidence to support the conclusion of the Worker's Compensation Court that the claimant was entitled to benefits because her exposure to chemicals at work was the primary cause of her physical harm in relation to other contributing factors?

(3) Did the Worker's Compensation Court err in assessing a 20 percent penalty on the insurer on the grounds that its denial of the claim was unreasonable?

The facts as found by the hearings examiner and adopted by the

2

court indicate that the claimant suffered a severe respiratory attack on May 10, 1988, as a direct result of an exposure to a chemical or allergen in the workplace. On that day the claimant had difficulties with her asthma due to some odor present at the Missoula office of the Montana Department of Highways where she worked. As a result, she planned to complete some work and then leave early for the day.

Shortly before noon, the claimant went to the office copy machine to complete her work. The copy machine is located close to the mechanic's shop. While operating the copier, the claimant heard the door to the mechanic's shop open, and detected a strong chemical odor being drawn into a nearby exhaust fan. Within a few seconds of inhaling the chemical odor the claimant found breathing difficult. She returned to her desk and felt the need to rest for a moment before starting home. Upon heading for her car to leave for the day, her respiratory difficulties increased severely and a coworker assisted her. The claimant was taken by ambulance to the hospital where she spent several days in intensive care. Claimant was placed on oxygen and the testimony of her treating physician and an independent examining physician indicate that she will likely remain on oxygen for the remainder of her life. The court found that as a result of the episode the claimant is totally disabled.

The claimant has a history of respiratory ailments prior to the accident involved here. Her symptoms of respiratory ailments began in 1983 and 1984. She was evaluated for allergies in June

of 1983. In 1987, an inhaler was prescribed for the claimant to be used every four hours to control her asthma. Later that year, she suffered an asthmatic attack on an airplane at the Helena airport.

The claimant's attending physician, Dr. William Bekemeyer a specialist in pulmonary medicine and intensive care, treated the claimant in the emergency room of St. Patrick's Hospital, Missoula, Montana, the day of the accident. He testified that the claimant was in severe respiratory distress and if she had not received treatment that day in his opinion she probably would have died. Dr. Bekemeyer also opined that the need for hospitalization was caused by exposure to some unidentifiable chemical present in the workplace on May 10, 1988.

A mediation conference was held in this matter on December 2, 1988, pursuant to § 39-71-2401 et seq., MCA. Prior to this time, no independent medical examination was requested or given. Following the conference the insurer requested an independent medical examination which was subsequently conducted by Dr. Thomas Schimke on April 21, 1989.

Dr. Schimke is a specialist in internal medicine and pulmonary disease. He testified that his conclusions did not contradict those of Dr. Bekemeyer. However, he minimized the importance of the May 10, 1988 episode in relation to the claimant's health problems "because she did not have a known toxic exposure to any identifiable chemical." The findings of fact note that this conclusion clearly contradicts the conclusion of Dr. Bekemeyer,

4

which clearly connected the claimant's hospitalization to an exposure to a chemical or allergen in the workplace on that day. The hearings examiner also found that the claimant's treating and attending physician, Dr. Bekemeyer, was in a much better position to assess the cause of the claimant's present medical condition, noting that Dr. Schimke only spends 25% of his time on respiratory treatment.

Dr. Schimke also concluded that the claimant has chronic obstructive lung disease. He ultimately concluded that the claimants' alleged exposure to chemical irritants in the work place was not the primary cause of her physical harm in relation to other factors contributing to her physical harm. One factor influencing Dr. Schimke's conclusion was the fact that claimant's alleged exposure to chemical irritants resulted in a reversible obstructive airway disease called status asthmaticus which was eventually corrected. Dr. Schimke concluded that this reversible condition was the only result of the exposure at the workplace and therefore the claimant's disability is due to her underlying obstructive lung disease which was primarily caused by claimant's allergies, smoking, and heredity.

The State Fund initially denied liability for the claim on the grounds that the exact chemical agent causing the alleged injury could not be identified. At the time that denial was issued the insurer had access to the report of Dr. Bekemeyer connecting the injury to an exposure in the workplace. Regardless of that report, the insurer did not make an investigation until after a

5

petition was filed in this claim. After filing of the petition, the only investigation by the defendant insurer related to the independent medical examination which was scheduled only after a trial date had been set in this case. The hearings examiner and subsequently the court found that the insurer's denial was unreasonable and added a 20 percent penalty to all benefits that the insurer must pay the claimant. The insurer, relying on the 1987 amendments to the Act now appeals both liability for the claim and assessment of the penalty.

## I. and II.

Although the Workers' Compensation Act underwent substantial revision in 1987, this Courts' standard of review of decisions of the Workers' Compensation Court remains the same. Decisions of the Workers' Compensation Court will not be overturned if there is substantial evidence to support its findings and conclusions. Giacoletto v. Industrial Indemnity Co. (1988), 231 Mont. 191, 751 P.2d 1059; Tenderholt v. Travel Lodge International (1985), 218 Mont. 523, 526, 709 P.2d 1011, 1013. Where findings are based on conflicting evidence, the reviewing court's function is confined to this determination; it is not the court's function to determine whether there is sufficient evidence to support contrary findings. Stamatis v. Bechtel Power Corp. (1979), 184 Mont. 64, 68-69, 601 P.2d 403, 405-406.

The insurer argues as its first two issues that the Workers' Compensation Court erroneously interpreted the newly amended injury statute and substantial evidence is lacking to support the findings

of fact as adopted from the hearings examiner. We will discuss these first two issues together in light of the above-cited standard of review.

The injury statute of the Worker's Compensation Act, as amended in 1987, provides:

> **39-71-119. Injury and accident defined.** (1) "Injury" or "injured" means:
> (a) internal or external physical harm to the body;
> (b) damage to prosthetic devices or appliances, except for damage to eyeglasses, contact lenses, dentures or hearing aids; or
> (c) death.
> (2) An injury is caused by an accident. An accident is:
> (a) an unexpected traumatic incident or unusual strain;
> (b) identifiable by time and place of occurrence;
> (c) identifiable by member or part of the body affected; and
> (d) caused by a specific event on a single day or during a single work shift.
> (3) "Injury" or "injured" does not mean a physical or mental condition arising from:
> (a) emotional or mental stress; or
> (b) a nonphysical stimulus or activity.
> (4) "Injury" or "injured" does not include a disease that is not caused by an accident.
> (5) <u>A cardiovascular, pulmonary, respiratory, or other disease, cerebrovascular accident, or myocardial infarction suffered by a worker is an injury only if the accident is the primary cause of the physical harm in relation to other factors contributing to the physical harm</u>. (Emphasis added.)

Section 39-71-119, MCA (1987). The claimant concedes that the amendments to the statute evince an intent by the legislature to restrict coverage under the Workers' Compensation Act. The old statute provided that "[n]othing herein shall be construed to exclude any other working person who suffers a cardiovascular, pulmonary, or respiratory disease while in the course and scope of his employment." See § 39-71-119(2), MCA (1985). Subsection (5)

7

of the amended statute now provides some more definite guidelines as to which diseases are actually compensable under the new law. Under the new statute, cardiovascular, pulmonary, or respiratory diseases warrant coverage only if the claimant can show that the accident is the primary cause of the physical harm in relation to other contributing factors.

The insurer contends that a plain reading of the statute requires the claimant to prove by a preponderance of the evidence that the harm of her chronic obstructive pulmonary disease was primarily caused by her exposure at work in relation to other factors contributing to that harm. This contention assumes that the term "physical harm" in the statute refers to the claimants cumulative present condition. If claimant were required to prove that her cumulative health condition was caused primarily by her exposure at work her burden would be impossible. Thus, to accept the insurer's contention would render subsection (5) of the statute meaningless, because a claimant with pre-existing cardiovascular, pulmonary, or respiratory problems suddenly aggravated by a traumatic accident at work could never meet this burden. Also, the legislature did not clearly set forth the meaning of the term "harm" as used in the statute. The statute does define an injury as "physical harm to the body" and defines an injury as an event caused by an accident. It follows that for a claim to be compensable the physical harm required by the statute is not the claimant's cumulative present condition but is that harm which results primarily from the accident at the workplace.

8

Here the physical harm complained of is not the cumulative condition of the claimant's chronic obstructive pulmonary disease. Rather, the resultant harm is the aggravation caused by the exposure to toxins in the workplace. That the "primary cause" of this aggravation was the exposure in the workplace is apparent from the drastic change in the claimant's condition following the exposure on May 10, 1988. This drastic change in her condition is reflected in finding no. 27:

> 27. Dr. Schimke testified that the Claimant had irreversible obstructive disease. (Tr. at 89.) He also testified that there were some significant changes in her medical situation after May 10, 1988. (Id.) Specifically, following that date, the Claimant was placed on oxygen. (Id. at 89-90.) She is on oxygen all of the time. (Id.) Moreover, he [Dr. Schimke] agreed that the Claimant was unable to work following May 10, 1988. (Id. at 90.) Claimant's condition has dramatically declined, and that decline began immediately following the May 10, 1988 episode. Even according to Dr. Schimke's own testimony, she will be on oxygen for the remainder of her life. She will also be unable to work. It is clear that the claimant's medical condition changed drastically following the injury of May 10, 1988. (Emphasis added.)

As this finding indicates, the drastic change in the claimant's medical condition was primarily caused by the accident in the work place where she was exposed to chemical toxins or allergens, it was not merely the progressive result of her pre-existing respiratory ailments. Nor did her pre-existing respiratory ailments--admittedly contributing factors--primarily cause the physical harm suffered as contemplated by the statute. Rather, the "primary cause" of the harm suffered in this case was the triggering event where the claimant was exposed to toxic fumes at the workplace. There is substantial evidence in the testimony of Dr. Bekemeyer to

9

support this finding. Furthermore, the hearings examiner chose to assign more weight to the treating physician, Dr. Bekemeyer, than the independent medical examiner, Dr. Schimke, and this finding was adopted by the Workers' Compensation Court. We will not substitute our judgment for that of the Workers' Compensation Court as to the weight of the evidence on questions of fact. Robins v. Anaconda Aluminum Co., (1978), 175 Mont. 514, 575 P.2d 67. Therefore, under these facts the claimant is entitled to benefits under the statute.

## III.

The insurer also claims that the Workers' Compensation Court erred in assessing a 20 percent penalty against it on the grounds that its denial of the claim was unreasonable. The applicable statute, § 39-71-2907, provides in pertinent part:

> **39-71-2907. Increase in award for unreasonable delay or refusal to pay.** (1) When payment of compensation has been unreasonably delayed or refused by an insurer, either prior or subsequent to the issuance of an order by the workers' compensation judge granting a claimant compensation benefits, the full amount of the compensation benefits due a claimant between the time compensation benefits were delayed or refused and the date of the order granting a claimant compensation benefits may be increased by the workers' compensation judge by 20%. The question of unreasonable delay or refusal shall be determined by the workers' compensation judge. . . .

Section 39-71-2907, MCA (1987). This penalty statute should not be used by the Workers' Compensation Court to discourage legitimate defenses of disputed claims. Paulson v. Bozeman Deaconess Hospital (1984), 207 Mont. 440, 444, 673 P.2d 1281, 1283. The insurer contends that the imposition of a penalty in this case by the

10

Workers' Compensation Court discourages legitimate defenses of disputed claims because the insurer had a defense for denial of this claim based on the plain language of the statute, the clear legislative intent, and the particular facts of this claim as revealed in the record.

We disagree. The Workers' Compensation Court stated that "[t]he imposition of the penalty in this case is premised on the insurers failure to directly and specifically identify for the claimant's treating physician, the significance of the term 'primary cause' in a 'medical' context." Moreover, the insurer made no investigation of the claim in light of the new law when the reports of the treating physician were available to it; instead it summarily denied the claim on the grounds that the exact chemical agent was not identified. Such an identification is not required by the statute. The insurer has a duty to make at least a minimal investigation of a claim's validity in light of the relevant statutes. Absent such an investigation, as in the case at bar, denial of a claim for benefits is unreasonable. The claimant is entitled to the penalty under the statute.

The order of the Workers' Compensation Court awarding claimant benefits and assessing a 20 percent penalty for unreasonable denial of her claim is

AFFIRMED.

_____
Justice

We Concur:

_____
Chief Justice

11

_____

John Conway Harrison
_____

Diane G. Barz
_____

William E. Hunt Sr.
_____

John Sheehy
_____

_____
Justices