No. 91-451

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

DEBRA NAVE, as surviving widow of
LAWRENCE E. NAVE, JR., and as Personal
Representative of the Estate of LAWRENCE
E. NAVE, JR., and as conservator of the
Estate of BEAU NAVE,

Petitioner and Appellant,

-vs-

STATE COMPENSATION MUTUAL INSURANCE FUND,

Respondent,

-vs-

MARY LOU WEYER, as conservator of the
Estate of RANDI MARIE NAVE,

Intervening party.

**FILED**

JUL 2 0 1992

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   The Workers' Compensation Court,
               The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Lloyd E. Hartford; Billings, Montana

        For Respondent:

        Joe C. Maynard; Crowley, Haughey, Hanson, Toole &
        Dietrich, Billings, Montana

Submitted on Briefs:   April 2, 1992

Decided:   July 20, 1992

Filed:

_____
            Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Appellant Debra Nave, claimant's widow, appeals from an order and judgment of the Montana Workers' Compensation Court. The Workers' Compensation Court Hearings Examiner's findings of fact and conclusions of law stated that Mr. Nave's (Nave) suicide was not causally related to his on-the-job injury and denied appellant's request for attorney's fees and a twenty percent penalty award. We affirm.

We review the following dispositive issue: Whether the Workers' Compensation Court erred in determining that Nave's on-the-job injury was not the proximate cause of his suicide.

Nave was a forty-two-year-old male who graduated from high school in 1964 and served in the U.S. Army. He earned college credits but did not obtain a higher education degree. During his life, he was employed in various capacities including construction, farming and driving a truck as a teamster.

At the time of trial it was unclear how many children Nave had, but it was established that he was married numerous times, twice to Debra Nave, who had children from a previous marriage. His third marriage was to Mary Lou Weyer and the couple had one child, Randi Marie Nave. Nave's marriage to Weyer ended after less than a year. Debra and Nave re-married and the couple had a son, Beau.

On July 15, 1985, while working for Byron Construction, Nave

2

was injured on the job when, in the course of his employment, he attempted to start a water pump engine requiring him to utilize a hand crank. The engine apparently backfired and the crank handle struck him on the left side the face, which knocked him unconscious for a short period of time. Nave was evaluated at a medical facility in Broadus, Montana, and treated at the Miles City, Montana hospital. He returned to work within a few days after the accident. Nave continued to work until August 8, 1985, when he voluntarily quit his position and began drawing unemployment benefits. Later, after becoming eligible for Workers' Compensation benefits, Nave was required to repay the unemployment benefits.

As a result of his injury, Nave experienced headaches, numbness, neck and upper back pain. Nave consulted numerous doctors about his condition and also was treated by a chiropractor and via physical therapy.

Though disputed by the appellant, there was evidence that Nave was a heavy drinker prior to his injury. After the accident, Nave continued to consume large quantities of alcohol which increased over time. After receiving several DUIs, his driving privileges were taken away and he was admitted to the Sheridan, Wyoming, VA hospital for alcoholism treatment in February of 1987. He resumed drinking only days after this treatment.

In August of 1987, Nave began experiencing seizures which worsened over time. Other life events went particularly poorly for Nave such as the closure of the second-hand business he established

with the help of his parents.

Eventually, Nave became more abusive to his family. Debra testified that he struck her, and that sometime during the last week of his life he apparently shot at her with a rifle as she pulled into their driveway. His drinking continued until he drank almost constantly. Finally, Debra fled the family home with the couple's son fearing for their safety. Nave committed suicide by a self-inflicted gun shot wound on August 18, 1989.

Two days later Debra informed respondent, State Compensation Fund, of Nave's suicide and demanded payment for survivors' benefits. Respondent refused payment and terminated Workers' Compensation benefits as of August 19, 1989. Debra filed a petition for an emergency hearing due to financial hardship in September, 1989. The matter came before Hearings Examiner Robert J. Campbell on April 16 and 17, 1990, who issued findings of fact and conclusions of law on April 3, 1991. The court concluded that the appellant failed to establish that Mr. Nave's injury was a substantial or significant contributing cause of his suicide. The court also determined that the appellant was not entitled to receive a twenty percent penalty under § 39-71-2907, MCA, or the award of cost and attorney's fees under §§ 39-71-611 or -612, MCA. Debra petitioned for a rehearing on May 9, 1991, which was denied, and she now appeals to this Court.

The appellant focuses primarily on issues involving the Workers' Compensation Court's determination of witness'

4

credibility, especially as it relates to Nave's drinking history. The parties hotly disputed whether Nave's severe drinking problems arose before or after his on-the-job injury on July 15, 1985. This issue arose since the seizures Nave experienced were related to his long term excessive alcohol consumption. The court stated that "[t]he extensive medical evidence presented from Billings neurosurgeon Dr. Neil T. Meyer, Dr. Dale M. Peterson, Louis Robinson, Dr. Donald See, and Dr. Susan English contain no evidence to relate the July 15, 1985 injury to the grand mal seizure of August 6, 1987, the increasing dependency on alcohol or the depression that would result in Mr. Nave's suicide."

The appellant claims that substantial credible evidence did not exist to support the findings and conclusions of the Hearings Examiner. We disagree. For example, at trial, appellant testified that during the course of her first marriage to Nave, which was prior to the injury, he drank "maybe two or three beers a couple times a week." However, in her deposition she stated that on a day he was not working, "he possibly drank through the whole day maybe a six-pack or a little over a day of beer." Again, appellant testified that she never discussed Nave's drinking problem with any of his treating physicians. However, Dr. Carlson's deposition revealed that he did have a discussion with Debra about Nave's drinking, in which she stated that Nave began drinking more heavily after the injury. Appellant also acknowledged that in 1974 Nave had surgery and was treated for pancreatitis, but she denied this

5

condition was related to Nave's alcohol consumption. Dr. English, however, indicated that Nave's pancreatitis was caused by alcohol consumption.

Appellant later testified that she really did not know how much Nave drank while working, prior to his injury:

Q. The fact of the matter is, ma'am, you really don't know how much your husband drank before his injury, do you?

A. Not exactly how much he drank when he was working, he worked away from home.

Q. He was gone for up to six weeks at a time?

A. When he was driving over the road.

Q. And when he wasn't driving over the road, he was home sometimes on weekends; isn't that correct?

A. Yes.

Q. Would it be fair to say that the information you provided Dr. Carlson concerning your husband's drinking habits was guesswork?

A. It was the best that I knew, which - -

The court also detailed independent evidence of Nave's severe alcohol problems prior to his injury. A hospital record dated June 29, 1985, approximately two weeks before his injury, indicated that Nave went to Deaconess Hospital Emergency Room for a DUI blood test after being picked up by the sheriff. The test revealed a blood alcohol content of .266 and a diagnosis of "alcohol intoxication," even though Nave said he did not believe he was drunk.

In addition to other evidence of Nave's severe drinking habits prior to the injury, an alcohol dependency counselor, Lynn Ramsey,

6

also confirmed Nave's excessive alcohol consumption. She stated in her deposition that in her evaluation of Nave, he told her that he drank in excess of a six pack of beer a day since he reached the age of twenty-one.

The appellant's voluminous and repetitive brief is filled with various alleged errors committed by the Workers' Compensation Court, errors too numerous to mention here, which fall squarely into the witness' credibility arena. We need not address them individually, except to say that the Workers' Compensation Court is in the best position to observe the witnesses, including their demeanor and credibility. Giacoletto v. Silver Bow Pizza Parlor (1988), 231 Mont. 191, 195, 751 P.2d 1059, 1062; citing Tenderholt v. Royal Ins. Co. (1985), 218 Mont. 523, 525-526, 709 P.2d 1011, 1013. "In addition to observing the demeanor of the witness, the trier of fact can take into account the witness' capacity to recollect events, his inconsistent statement, and other evidence contradicting the witness' testimony." Hartfield v. City of Billings (1990), 246 Mont. 259, 264-265, 805 P.2d 1293, 1297. We previously have said:

> This Court will not substitute its judgment for that of the Workers' Compensation Court concerning the credibility of witnesses or the weight of their testimony. When conflicting evidence is presented, the scope of review is to establish whether substantial evidence supports the lower court's findings, not whether evidence may support contrary findings.

Smith-Carter v. Amoco Oil Co. (1991), 248 Mont. 505, 510, 813 P.2d 405, 408. The Workers' Compensation Court can choose whether or

7

not to believe a witness and, in the case at bar, obviously did not find the evidence and testimony of appellant's witnesses persuasive. Instead, the court chose to give more weight to the statements of the witnesses who indicated that Nave's drinking problem existed long before his on-the-job injury.

On appeal, this Court has set forth the appropriate standard of review in Workers' Compensation cases. The Workers' Compensation Court's conclusions of law will be upheld if the tribunal's interpretation of the law is correct. Grenz v. Fire and Casualty of Connecticut (1991), 250 Mont. 373, 378, 820 P.2d 742, 745; citing Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 474-475, 803 P.2d 601, 603. The Workers' Compensation Court's findings of fact will be upheld if supported by substantial credible evidence. Nelson v. Semitool, Inc. (Mont. 1992), 829 P.2d 1, 3, 49 St.Rep. 253, 254.

Section 39-71-721, MCA (1985), sets forth compensation for injury causing death as follows:

> (1) If an injured employee dies and the injury was the <u>proximate cause</u> of such death, then the beneficiary of the deceased, as the case may be, is entitled to the same compensation as though the death occurred immediately following the injury, but the period during which the death benefit is paid shall be reduced by the period during or for which compensation was paid for the injury. . . . [Emphasis added.]

We agree with the quotation by the Workers' Compensation Court of the following from Breen v. Industrial Accident Board (1968), 150 Mont. 463, 472-473, 436 P.2d 701, 706-707:

> What is meant by "proximate cause" under the above

8

statute [§ 39-71-721(1)]? Exactly the same thing it has meant under definitions of this court since time immemorial. The proximate cause of a person's death is that cause which in a natural and continuous sequence, unbroken by any new and independent cause, produces his death, and without which it would not have occurred. (See McNair v. Berger, 92 Mont. 441, 15 P.2d 834, and cases cited therein; also see MJIG, Instruction No. 15.00). This, of course, does not mean that the injury must be the sole cause of death, but it does mean that the injury must be a substantial contributing cause in the sense that death would not have occurred but for such injuries. In determining the range of compensable consequences from an industrial accident, Larson states the basic rule in this manner: "When the primary injury is shown to have arisen out of, and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct." (Larson's Workmen's Compensation Law, Vol. 1, § 13.00). [Emphasis added.]

In Breen, the widow's claim for compensation was denied because the husband's injury was not the proximate cause of his death. Mr. Breen drank a considerable amount for years, both before and after his injury. Breen, 150 Mont. at 468-469, 436 P.2d at 704. Mr. Nave's present case is analogous to Breen. Appellant has failed to show that Mr. Nave's injury was the proximate cause of his death.

We have carefully reviewed the extensive record and conclude there was substantial evidence to support the findings with regard to Mr. Nave's suicide. We hold there is substantial evidence to support the judgment conclusion that appellant had failed to establish that the injury of July 15, 1985, was the proximate cause of Mr. Nave's death, as proximate cause is defined in Breen. We therefore affirm the determination by the Workers' Compensation

9

Court that Mr. Nave's on-the-job injury was not the proximate cause his suicide.

Affirmed.

We concur:

_____
Chief Justice

_____

_____
Justices

_____
Justice

Justice Terry N. Trieweiler specially concurring.

I concur in the result of the majority opinion. However, I do not agree with all that is said therein. In particular, I do not agree with the majority's confusing and unnecessary discussion of causation which uses "proximate cause," "the substantial factor test," and the "but for test" interchangeably. The three concepts are not the same. However, the distinctions among them are not relevant to the outcome of this case.

_____
Justice

11

July 20, 1992

### CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


LLOYD E. HARTFORD
Attorney at Law
P.O. Box 1517
Billings, MT 59103-1517


Joe C. Maynard
Crowley, Haughey, Hanson, Toole & Dietrich
P.O. Box 2529
Billings, MT 59103-2529


Peter T. Stanley
Attorney at Law
P.O. Box 1980
Billings, MT 59103-1980


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy