# PATRICK STEVENS,
## Petitioner/Appellant
## and Cross-Respondent,
### v.
# STATE COMPENSATION MUTUAL
# INSURANCE FUND, STANFORD STEVENS,
## Defendant, Employer/
## Respondent and
## Cross-Appellant.

Nos. 94-004 and 94-005.
Submitted on Briefs August 11, 1994.
Decided December 19, 1994.
51 St.Rep. 1396.
268 Mont. 460.
886 P.2d 962.

For Appellant: **Michael G. Eiselein**, Lynaugh, Fitzgerald, Eiselein & Eakin, Billings.

For Respondent: **Michael P. Heringer**, Brown, Gerbase, Cebull, Fulton, Harman & Ross, Billings.

JUSTICE NELSON delivered the Opinion of the Court.

This is an appeal and cross-appeal from a Workers' Compensation Court order concluding that the claimant did not fraudulently obtain workers' compensation benefits from the State Fund. The Workers' Compensation Court also concluded that the insurer was not unreasonable in its investigation and termination of the claimant's benefits. We affirm in part and reverse and remand in part.

We restate the following issues on appeal and cross-appeal:

## APPEAL

I. Did the Workers' Compensation Court err in determining that the claimant, Patrick Stevens (Stevens) was not entitled to a 20 percent penalty fee pursuant to § 39-71-2907, MCA?

II. Did the Workers' Compensation Court err in determining that Stevens was not entitled to attorneys' fees pursuant to § 39-71-611, MCA?

III. Did the Workers' Compensation Court err in failing to award the expenses of the private investigator Stevens hired to defend himself against the claim that he fraudulently obtained workers' compensation benefits?

IV. Did the Department of Labor and Industry (DOLI) and the Workers' Compensation Court err when they failed to reinstate Stevens' benefits for 49 days pursuant to § 39-71-610, MCA.

## CROSS-APPEAL

I. Did the Workers' Compensation Court err in determining that Stevens did not fraudulently obtain Workers' Compensation benefits?

## FACTUAL AND PROCEDURAL BACKGROUND

Stevens' account of his injury provides that he was employed by his father, Stanford Stevens, on October 25, 1990, when he was injured, falling a distance of three feet from a grain drill he was preparing for planting of the winter wheat crop. He experienced increasing pain and complications and went to St. Vincent's Hospital later that day. An MRI revealed that Stevens had a herniated disc, requiring surgery, which was performed on October 26, 1990.

Stevens' father/employer had applied for Workers' Compensation insurance on October 24, 1990. The policy became effective on October 25, 1990, the day Stevens was injured. The State Fund assumed liability for the accident and Stevens was paid temporary total disability benefits of $233.33 per week from November 1, 1990 until October 23, 1991. He also received total rehabilitation benefits of $233.33 per week from October 24, 1991 until his benefits were terminated.

On April 22, 1993, Stevens received a letter stating that his benefits would be terminated in 14 days, pursuant to § 39-71-609, MCA. On April 29, 1993, Stevens filed an emergency petition seeking a reinstatement of his benefits. The Workers' Compensation Court held a hearing in Billings, Montana, from August 23 through 25, 1993, on the emergency petition.

Statements by Carolyn Becker, (Becker), Stevens' ex-wife, to the State Fund had formed the basis for the State Fund's decision to terminate Stevens' benefits. Becker had alleged that Stevens had been injured prior to the accident date of October 25, 1990, and that the reported accident was a ruse to obtain medical treatment for Stevens. Her testimony, however, was inconsistent and bears further elucidation.

Becker provided inconsistent testimony during the two investigations conducted concerning the validity of Stevens' injury, and in her deposition and at the emergency petition hearing. She told Greg Stone, a private investigator hired by the State Fund to conduct the initial investigation, that Stevens had been "injured for a couple days up to one week before having surgery." She also told Stone that Stevens had never had a back injury prior to this injury at issue. She further related to Stone that she would not testify against Stevens regarding the injury.

However, in her July 27, 1993 deposition, she stated that Stevens had been "laid up" and in great pain for a week to ten days prior to going to the hospital. She further testified that he lay or slept on the floor, night and day, in "a lot of pain," for the seven to ten day period. She also asserted that Stevens had been injured while fishing in July 1990, when he fell in a hole in the river. She claimed that he "reinjured" his back in October, trying to lift something, although Becker was not clear about what he was trying to lift at the time. Finally, she stated that he had informed her that the reinjury was related to the July fishing accident.

At the August 23 emergency petition hearing, she testified that Stevens had injured his back when they were on a fishing trip in July of 1990. She stated that he reinjured his back in October of 1990 when he bent over to pick something up. She further testified that he had always had a bad back.

In further testimony at the hearing, Becker claimed that in the days immediately preceding October 25, she spoke with Max Thornton, Mary Jane Coley and Layne Coley about Stevens' back injury, thus proving he was injured prior to the date he professes to have been injured. However, during cross-examination of Becker, Stevens' attorney impeached her testimony with an obituary from the Billings Gazette and a death certificate which indicated that Layne Coley had died in early August of 1990, months before the alleged conversations about Stevens' back injury occurred. Becker's testimony about Stevens' pre-dated injury was also refuted by both Stevens' uncle, Harold Patrick Hughes, and Stevens' father, Stanford Stevens. Stevens' father testified that when he saw him on October 24, he appeared to be fine and showed no sign of back pain or injury.

Hughes, Stevens' uncle, testified that he had seen Stevens at the Northern International Livestock Exposition (NILE) cattle show on October 18, 1990, and that he could discern no signs of back injury; "[h]e seemed very normal, no signs of pain." Although Becker had

testified at her deposition that Stevens laid on the floor of their home, except to go to the bathroom, in great pain for seven to ten days prior to his admission to the hospital on October 25, she testified at the hearing that Hughes may very well have seen Stevens at the cattle show because he could do whatever he wanted, "he was up and down, and so on, when I say he basically laid on the floor, it's when he was doing nothing he was laying on the floor."

The hearing examiner concluded that Stevens and his uncle were credible witnesses with consistent testimony. He found that Becker's stories were inconsistent, incredible and appeared to be fabricated. He concluded that the totality of the evidence presented did not justify the termination of benefits and that Stevens was entitled to benefits retroactive to the date of termination. The hearing examiner also concluded that Stevens was not entitled to the 20 percent penalty levied for an unreasonable refusal to provide benefits nor was he entitled to attorneys' fees because the State Fund "acted reasonably with the evidence it had in its possession."

The hearing examiner's Findings of Fact, Conclusions of Law, and Proposed Judgment was filed on December 3, 1993. On that same day, the Workers' Compensation Court judge filed an order adopting the Findings of Fact and Conclusions of Law of the Hearing Examiner and entered Judgment. This appeal followed.

## STANDARD OF REVIEW

■ The standard of review for findings of the Workers' Compensation Court is that such findings will not be overturned if there is substantial evidence in the record to support them. *Stordalen v. Ricci's Food Farm* (1993), 261 Mont. 256, 258, 862 P.2d 393, 394. "Whether an insurer's conduct is unreasonable is a question of fact." *Lovell v. State Comp. Mut. Ins. Fund* (1993), 260 Mont. 279, 288, 860 P.2d 95, 101. See also: *Dean v. Austin Mut. Ins. Co.* (1994), 263 Mont. 386, 389, 869 P.2d 256, 258.

## DISCUSSION

### ISSUES I AND II—PENALTY FEE AND ATTORNEYS' FEES

■ Issues I and II address whether the Workers' Compensation Court erred in failing to award a 20 percent penalty fee pursuant to § 39-71-2907, MCA, and attorneys' fees pursuant to § 39-71-611, MCA, for unreasonably terminating a claimant's benefits. Section 39-71-2907, MCA, provides in pertinent part:

(1) When payment of compensation has been unreasonably delayed or refused by an insurer, either prior or subsequent to the issuance of an order by the workers' compensation judge granting a claimant compensation benefits, the full amount of the compensation benefits due a claimant between the time compensation benefits were delayed or refused and the date of the order granting a claimant compensation benefits may be increased by the workers' compensation judge by 20%. The question of unreasonable delay or refusal shall be determined by the workers' compensation judge, and such a finding constitutes good cause to rescind, alter, or amend any order, decision, or award previously made in the cause for the purpose of making the increase provided herein.

Section 39-71-611, MCA, provides in pertinent part:

(1) The insurer shall pay reasonable costs and attorney fees as established by the workers' compensation court if:

(a) the insurer denies liability for a claim for compensation or terminates compensation benefits;

(b) the claim is later adjudged compensable by the workers' compensation court; and

(c) in the case of attorneys' fees, the workers' compensation court determines that the insurer's actions in denying liability or terminating benefits were unreasonable.

Issues I and II must be decided based upon a determination as to whether the insurer was unreasonable in terminating benefits; if it was unreasonable, a penalty fee and attorneys' fees may be awarded pursuant to §§ 39-71-2907, and 39-71-611, MCA, respectively.

The Workers' Compensation Court concluded that the insurer had a reasonable basis for believing that Stevens was not injured on-the-job and was not, therefore, entitled to benefits. We must determine whether substantial evidence supports this conclusion. If the insurer was reasonable in its investigation of the claim, there is no basis upon which to award the penalty fee or attorneys' fees. If, however, there is not substantial evidence to support the Workers' Compensation Court's conclusion that the insurer's actions were reasonable, this Court must overturn the Workers' Compensation Court's decision and an award of a penalty fee and attorneys' fees will be warranted.

Previous case law lends assistance in determining whether, in the instant case, the insurer provided a reasonable review and evaluation of the evidence prior to terminating Stevens' benefits. Our

case law provides that "an insurer has a duty to make at least a minimal investigation of a claim's validity in light of the relevant statutes. Absent such investigation, denial of a claim for benefits is unreasonable." *Lovell*, 860 P.2d at 101. See also; *Gaumer v. Montana Dept. of Highways* (1990), 243 Mont. 414, 421, 795 P.2d 77, 81.

*Lovell* involved an action arising out of the State Fund's decision to terminate the benefits of Mr. Lovell when it learned that he was receiving Social Security benefits. The Workers' Compensation Court concluded, and this Court agreed, that even a cursory investigation would have revealed that Lovell received Social Security benefits due to his alcoholism, not because of the injury at issue. The *Lovell* Court further stated that in that case, the State Fund's failure to fulfill its duty to investigate served as a sufficient basis to conclude that State Fund's actions were unreasonable. Moreover, this Court stated that "[p]ayment of unreasonably withheld benefits 'on the courthouse steps' does not negate the insurer's potential liability for a penalty for unreasonable delay of benefits. To conclude otherwise would render the 'unreasonable delay' provisions of the penalty statute moot." *Lovell*, 860 P.2d at 102. (Citation omitted.)

With the *Lovell* principles in mind, we analyze whether the insurer was unreasonable in terminating benefits in the instant case. First, a basic timeline of the events of the case proves helpful. On October 28, 1992, an anonymous hotline tip call was placed to the State Fund, stating that the claimant was working. Approximately one month later, Greg Stone was hired to investigate the claim and about one month after Stone was assigned to the case, he delivered his report to the State Fund. Visser testified that he did not read Stone's report but that he was familiar with what was in the report.

On February 24, 1993, Nancy Butler sent a letter to Robert Fairchild, Bureau Chief of the Montana Criminal Investigation Bureau (MCIB), asking for an investigation into Stevens' claim. Tom Woods was assigned to investigate the claim and on March 26, 1993, Fairchild wrote to Visser, stating that the investigation had been completed and a copy of Woods' report was enclosed.

Visser did not read Woods' report before he sent a reply letter to the MCIB, relating the total amount paid by the State Fund to date for Stevens' claims and enclosing, for return, Woods' report. Visser stated that he did talk to Woods, but only once, and only about whether Woods had a witness who would testify against Stevens.

Visser provided the following testimony:

Q. And you didn't know what was in Mr. Woods' report because you read it—because you hadn't read it. The only way you knew what was in the report was from whatever conversation you had with Mr. Woods about what was in his report, right?

A. Right.

Q. Okay. And you talked, before you made this decision to terminate Mr. Stevens' benefits, you talked to Mr. Woods one time, and one time only, am I right?

A. Regarding whether or not there was going to be a witness, yes.

Q. Well, and that's all you talked to him about?

A. Right.

Q. You didn't talk to him about what was in his report other than are we going to have a witness or not, before you made the decision to terminate?

A. We knew whether or not we had a case if we had a witness. And that was the only issue.

Q. My point is, can you answer this yes or no, did you know, either from reading or talking to Mr. Woods, what it was that Mrs. Stevens was going to say?

A. I had heard that she was going to testify that the claimant was injured prior to coverage being obtained.

When Visser learned that Woods did have a witness who would testify about the falsity of the claim, he decided to terminate benefits; the date of the decision to terminate was April 21, 1993. On April 22, 1993, Stevens received notice via letter that his benefits were being terminated.

Visser testified that he never spoke with Becker about her testimony to determine whether she was a credible witness despite the fact that he knew the witness was the claimant's ex-wife. Visser provided the following testimony:

Q. So at the time you made the decision [to terminate Stevens' benefits], you didn't know whether you had or whether you didn't have a credible witness?

A. When I made the decision, we knew we had a witness who was willing to testify that claimant's injury did not occur on that date. It's not my job to judge whether or not that testimony is credible.

Q. And so at the time you made the decision you didn't know whether she was credible or not, did you?

A. At the time I made the decision, I knew she was going to testify that the injury did not occur on the date that the claimant said it did.

Q. Mr. Reporter, may I have my question read back.

(Question read.)

Q. Yes or no?

MR. HERINGER: I think he responded to the question as posed.

MR. EISELEIN: I don't think so.

THE COURT: I will allow the question. You may answer the question.

THE WITNESS: We knew we had somebody that was going to testify. That, combined with the fact that the claimant had the coverage on the 25th, claimed the injury on the 25th, that was enough reason to terminate benefits.

Q. (By Mr. Eiselein:) I will try it one more time. Did you know on the 21st of April of '93 whether or not Carolyn Becker was credible or not?

.    .    .    .    .    .    .

THE WITNESS: I knew she was going to testify. How credible she was or was going to be is not for me to decide.

Q. (By Mr. Eiselein:) Who is it up to to decide?

A. That's His Honor's job, not mine.

Visser further testified at the hearing that his sole basis for terminating Stevens' benefits was the fact that there *was* a witness who would come forward and testify that the injury occurred before October 25, 1990. As stated in the cited testimony above, he did not concern himself with the credibility of the witness' testimony.

Additionally, Visser testified that he never interviewed, nor did he know if either of the investigators ever interviewed, Stevens' surgeon, Stevens' father/employer, or Stevens, himself. Neither did Visser know if anyone had requested an opportunity to speak to Stevens' through his attorney in an attempt to verify or question the fraud claim. Visser simply did not conduct any investigation other than determining that there was a witness who would testify that the injury occurred prior to October 25, 1993.

A cursory investigation would have revealed that there was "bad blood" between Becker and Stevens as well as the entire Stevens' family. If he had interviewed Stevens' surgeon, Dr. Meyer, he would have realized that the injury was more consistent with Stevens' version of events than Becker's version. Dr. Meyer also could have

informed Visser that Stevens was straightforward and consistent in providing information about the injury to all medical personnel involved in his treatment and recovery. Moreover, testimony from Stanford Stevens and Harold Hughes would have revealed that witnesses had observed Stevens prior to October 25 and he appeared pain-free and injury-free at that time. Visser failed to avail himself of opportunities to validate the fraud allegations.

Several problems, in fact, exist in State Fund's handling of this case. First, the State Fund ordered two investigations into a possible fraud perpetrated by Stevens but Visser *never read* the reports. Second, he failed to evaluate the credibility of the "star" witness in the case by interviewing her about her proposed testimony. Third, he did not seek to validate her allegations through interviews with other witnesses or Stevens, himself. Fourth, if Visser felt that it was not his job to judge the credibility of the "star" witness, his recourse should have been to petition the Workers' Compensation Court to terminate Stevens' benefits.

Having made the determination to investigate, it was incumbent upon Visser to base his decision to terminate on a reasoned evaluation of the evidence, including a review of the investigative reports, an evaluation of the credibility of the "star" witness and further investigation into possible testimony from other available witnesses. Visser only determined whether there was a witness who would testify that a fraud had been perpetrated against the State Fund; no evaluation was conducted as to the merit or validity of her proposed testimony.

In determining whether there is a reasonable basis for denying a claim, we conclude that there must be a reasoned review of all available evidence in the case. The review of the evidence should be followed by an impartial evaluation of the evidence reviewed. Only after such review and evaluation is the insurer in a position to decide whether to:

1. close the file if the evidence clearly does not support a claim of fraud;

2. conduct further investigation if the review and evaluation suggests that is necessary;

3. petition the Workers' Compensation Court for a termination of the benefits where the weight of the evidence is inconclusive or where witness' credibility is an issue; or

4. terminate the benefits where substantial evidence exists that a fraud has occurred.

In the instant case, a reasonable review and evaluation were not conducted; essentially, *no* review and evaluation were conducted. The failure to provide even a minimal review and evaluation once the investigations were concluded rises to the level of unreasonable conduct by the State Fund and mandates a reversal of the Workers' Compensation Court's conclusion that the State Fund was reasonable in terminating Stevens' benefits. *Gaumer*, 795 P.2d at 81; *Stordalen*, 862 P.2d at 395; *Lovell*, 860 P.2d at 101-102. We hold that substantial evidence did not exist to support the Workers' Compensation Court's conclusion that the State Fund's termination of benefits in the instant case was reasonable. Because the actions of the insurer were unreasonable, an award of a penalty pursuant to § 39-71-2907, MCA, and attorneys' fees pursuant to § 39-71-611, MCA, is warranted and should be assessed on remand. We reverse the Workers' Compensation Court on Issues I and II and remand for proceedings consistent with this opinion.

## ISSUE III—COSTS

Stevens argues that he should have been awarded the costs of the investigator he hired to defend against the fraud claim. Section 25-10-201, MCA, is a general statute which governs the award of costs and was made applicable to workers' compensation cases in *Baeta v. Don Tripp Trucking* (1992), 254 Mont. 487, 493-94, 839 P.2d 566, 570. Section 25-10-201(9), MCA, provides in pertinent part that included in the costs which may be awarded to a party are "such ... reasonable and necessary expenses as are taxable according to the course and practice of the court or by express provision of law." Section 25-10-201(9), MCA. Therefore, our task is to determine whether the cost of a private investigator is taxable according to the course and practice of the Workers' Compensation Court or by express provision of law.

In the instant case, in its Order Awarding Costs, the Workers' Compensation Court judge stated that expenses for Stevens' private investigator would be disallowed because "it [was] not an expense otherwise taxable 'according to the course and practice of the court or [by] express provision of law,'" citing § 25-10-201(9), MCA. The Workers' Compensation Court here expressly stated that it was not within the course and practice of the court to award the costs of a private investigator. We must defer to the Workers' Compensation Court in its determination of its own course and practice and therefore, we cannot premise an award of costs on this basis.

■ Our next step is to determine whether an express provision of law mandates an award of costs for the services of a private investigator. It is the rule in Montana that statutory authority must exist in civil cases for any award of costs. *Masonovich v. School Dist. No. 1* (1978), 178 Mont. 138, 140, 582 P.2d 1234, 1235. In the present case, no statutory authority was cited by Stevens nor did this Court locate any statutory authority which would support an award for the costs of a private investigator in this case.

*Kadillak v. Mont. Dept. of State Lands* (1982), 198 Mont. 70, 79, 643 P.2d 1178, 1184, further provides that "the list of items [in section 25-10-201, MCA,] is exclusive except as to cases taken out of its operation by special statute, by stipulation of the parties or by rule of court," quoting *Roseneau Foods, Inc. v. Coleman* (1962), 140 Mont. 572, 580, 374 P.2d 87, 91. As stated above, there is no special statute applicable here nor any rule of the Workers' Compensation Court which lends support to such an award; nor was there any evidence that the parties stipulated to an award of such costs. Therefore, we hold that the Workers' Compensation Court did not err in disallowing an award for the costs of Stevens' private investigator.

## ISSUE IV—§ 39-71-610, MCA

Finally, Stevens argues that the DOLI and the Workers' Compensation Court erred in failing to reinstate his benefits for forty nine days, pursuant to § 39-71-610, MCA. Because we affirm the Workers' Compensation Court's judgment that Stevens received a compensable industrial injury and is entitled to benefits retroactive to the date of termination, we do not reach this issue.

## CROSS-APPEAL

## ISSUE I—SUBSTANTIAL EVIDENCE

■ The State Fund cross-appeals the issue of whether the Workers' Compensation Court erred in concluding that Stevens did not fraudulently obtain workers' compensation benefits. The State Fund argues that overwhelming and substantial evidence establishes that Stevens did commit a fraud upon the State Fund.

■ In addressing this issue, we are guided by the principles of our standard of review for findings of fact made by the Workers' Compensation Court. This Court cannot substitute its judgment for that of the trial court as to the weight of the evidence on questions of fact. *Wood v. Consolidated Freightways, Inc.* (1991), 248 Mont. 26, 28,

808 P.2d 502, 504. "Where there is substantial evidence to support the Workers' Compensation Court, this Court cannot overturn the decision." *Wood*, 808 P.2d at 504. (Citations omitted.) This Court will not substitute its judgment for that of the Workers' Compensation Court in matters of witness credibility and the weight of their testimony. *Nave v. State Comp. Mut. Ins. Fund* (1992), 254 Mont. 54, 58-59, 835 P.2d 706, 709. (Citation omitted.) Finally, it is not this Court's responsibility to determine whether sufficient evidence supports a contrary finding. *Houts v. Kare-Mor Inc.* (1993), 257 Mont. 65, 68, 847 P.2d 701, 703. Therefore, our review entails a determination of whether substantial evidence *supports* the decision of the Workers' Compensation Court.

The decision of the Workers' Compensation Court that the claimant did not fraudulently obtain compensation benefits and that his benefits should be retroactively reinstated is supported by substantial evidence in the record. Stevens, himself, consistently maintained that he was injured when he fell from a grain drill on October 25, 1990. A telephone call placed by Becker with investigator Woods listening in, intended to place Stevens in a position to reveal a fraud upon the State Fund, revealed no evidence of fraud. Further, Stevens' surgeon testified that Stevens' account of his injury remained consistent to the various medical personnel he encountered throughout his treatment and recovery.

The hearing examiner concluded that "[a]fter observing the demeanor of the claimant and having read [his deposition testimony] and noting no inconsistencies in the claimant's deposition testimony and corroboration by other witnesses, the Court finds the claimant to be a credible witness." The factfinder is in the best position to observe the demeanor and credibility of the witnesses, and in the instant case, the hearing examiner felt that Stevens' account was credible. *Nave*, 835 P.2d at 709.

Stevens' account of his injury is supported by the testimony of other witnesses. Although Becker had testified at the hearing that Stevens was injured prior to October 25, 1990, witnesses who observed him shortly before that date testified that he appeared fine and they observed no signs of pain or injury in Stevens. Stevens' uncle, Harold P. Hughes, testified that he had seen Becker at a cattle show and he showed no signs of a disabling back injury. The hearing examiner, whose findings of fact and conclusions of law were adopted by the Workers' Compensation Court, found Stevens' uncle to be a credible witness. Stevens' father also testified by deposition that he had seen

Stevens in the days before October 25, 1990, and he could not discern any problems with pain or injury in his son.

Moreover, Dr. Meyer testified that the injury was much more consistent with Stevens' account of the accident than Becker's story that he was injured when he bent over to "pick something up." The Workers' Compensation Court concluded that "[t]he record clearly support[ed] the conclusion of the hearing examiner that petitioner is entitled to benefits and was not guilty of fraud." We agree.

Although it is not this Court's responsibility to determine whether there is substantial evidence to support a contrary finding, we point out that the basis of the State Fund's conclusion that Stevens committed fraud was the testimony of a witness who was determined by the hearing examiner to have been discredited. Further, in regard to her testimony, the Workers' Compensation Court judge stated that "Carolyn Becker's inconsistent stories, bias, and fabricated story of a conversation with a deceased individual were fatal to the fraud allegations against petitioner."

Becker testified at the hearing that she spoke with Layne Coley about her husband's injury during the week before he entered the hospital on October 25, 1990. However, her testimony was impeached through the admission of a death certificate and an obituary, both declaring that Coley had died in August of 1990, months before the alleged conversations about Stevens' back injury were to have occurred. Moreover, as stated above, other witnesses testified to observing Stevens during the week before the October 25, 1990 hospital admission date and finding him in good health. The trier of fact can take into account inconsistent statements and other evidence which contradicts a witness' statements in determining witness credibility. *Nave*, 835 P.2d at 709. In this case, Becker's inconsistent statements rendered her testimony tainted and her allegations meritless.

After reviewing all the evidence and assessing the witnesses' demeanor and credibility, we conclude that substantial *credible* evidence exists to support the Workers' Compensation Court's conclusion. We hold that the Workers' Compensation Court did not err in its determination that Stevens did not commit fraud. We further hold that Stevens' benefits should be reinstated retroactive to the date when they were terminated.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

CHIEF JUSTICE TURNAGE, JUSTICES HARRISON, GRAY and WEBER concur.

JUSTICE TRIEWEILER specially concurring in part and dissenting in part.

I concur with the majority's resolution of Issues I, II, IV, and V.

I dissent from the majority's conclusion under Issue III that claimant had no right to reimbursement for the costs he reasonably incurred in an effort to recover benefits which were unlawfully terminated unless those costs are provided for in § 25-10-201, MCA.

Claimant's right to recover costs in this case is governed by the provisions of the Workers' Compensation Act. The provision of that Act which relates to claimant's right to recover costs is correctly identified by the majority as § 39-71-611, MCA, which provides in relevant part that:

(1) The insurer shall pay reasonable costs and attorney fees as established by the workers' compensation court if:

(a) the insurer denies liability for a claim for compensation or terminates compensation benefits;

(b) the claim is later adjudged compensable by the workers' compensation court ....

As noted in the majority opinion, those conditions have been satisfied in this case. The only question was whether the costs claimed by claimant were "reasonable."

In *Baeta v. State Compensation Mutual Insurance Fund* (1992), 254 Mont. 487, 839 P.2d 566, this Court acted as a legislature, rather than a court, by adding qualifications to a claimant's right to recover costs that are not provided for in the Workers' Compensation Act. In doing so, that decision relied on prior cases which discussed costs in the context of district court litigation, rather than Workers' Compensation Court litigation. It also relied on § 25-10-201, MCA, which is a rule of civil procedure. Although we have, in the past, looked to the Rules of Civil Procedure for guidance where the Workers' Compensation Act does not deal with a subject, *see Moen v. Peter Kiewit & Sons' Co.* (1982), 201 Mont. 425, 434, 655 P.2d 482, 486, the Workers' Compensation Court is not otherwise bound by the Rules of Civil Procedure. In this case, the Workers' Compensation Act did cover the subject of costs which can be awarded to a successful claimant. The only limitation placed on those costs that may be recovered is that they be reasonable.

I would reverse *Baeta* and follow the Workers' Compensation Act, rather than irrelevant rules of civil procedure. For that reason, I dissent from that part of the majority's opinion which refuses to do so.

Furthermore, after reviewing the arguments of the parties, I conclude that claimant's claim for costs incurred to hire an investigator was reasonable and that under the terms of the Act he should have been reimbursed for those costs.

For these reasons, I would reverse that part of the judgment of the Workers' Compensation Court which denied claimant's costs, and I dissent from that part of the majority opinion which holds otherwise.

JUSTICE HUNT joins in the foregoing concurring and dissenting opinion.