CHARLES D. RICHARDSON, Plaintiff and Appellant, v. J. NEILS LUMBER COMPANY, Defendant and Respondent.

No. 9871.
Submitted January 13, 1959. Decided June 8. 1959.
Rehearing denied July 6, 1959.
341 Pac. (2d) 900.

602

Charles V. Huppe, Helena, represented and argued orally for appellant.

Walchli, Korn & Warden, Kalispell. Robert N. Helding, Libby, Merritt N. Warden, Kalispell, represented and orally argued for respondent.

MR. JUSTICE BOTTOMLY delivered the Opinion of the Court.

This is an appeal from a judgment of the district court denying compensation to Charles D. Richardson. The decision of the district court reversed the findings and order of the Industrial Accident Board of November 26, 1956, (which order allowed compensation to the claimant) and entered judgment for the defendant, J. Neils Lumber Company.

On June 29, 1956, the claimant was in the employ of J. Neils Lumber Company as a general laborer at the Company's lumber plant at Libby, Lincoln County, Montana, where he was injured, his employer was enrolled under Plan One of the Workmen's Compensation Act. At the time of his injury

claimant was married and had two children under 18 years of age.

Located in the Company's said lumber mill is a machine called a "resaw". Lumber is fed into this machine and is processed as it passes through the machine. This processed lumber is collected, formed into stacks and then stored in the lumberyard. One man is assigned the task of feeding the machine, two men collect the processed lumber, stack it and bind it into bundles for storage. Adjacent to the resaw machine and running roughly parallel to it is an endless conveyor. The point of origin of the conveyor, according to use, is below a planing machine which is located on the floor below the resaw machine. The conveyor is made up of large chain links which form a belt. This chain belt carries objects called "bunks" from where they are dropped out underneath the planer, on the floor where the resaw machine is located. The conveyor comes from the lower floor up through the floor upon which the resaw is located and then extends out along the floor some 20 to 30 feet. The conveyor is inclined and from where it comes up through the floor to where it terminates it raises to a height of approximately 55 inches. At its termination point the bunks are dropped off and collected. This termination point of the conveyor is approximately 18 feet away from the end of the resaw machine where the processed lumber is collected and tied into bundles. The point where the conveyor enters through the floor from the level below is approximately 32 feet away from the place where the processed lumber of the resaw machine is collected and tied into bundles. In the operation of the resaw machine, the lumber to be processed is brought to the machaine in stacks by lumber carriers. The carrier brings in the raw lumber deposits it at the feed end of the resaw then proceeds to the collecting end and picks up and carries away the bundles of processed lumber.

On June 29, 1956, the claimant was assigned work on the resaw machine. His specific task was to collect, stack and

tie up the bundles of processed lumber. One other workman assisted him with this job. On this day the claimant had worked at this task for some three hours. About this time the operator who brings in the raw lumber ran out of material to process which frequently happens. All the processed lumber available was stacked and tied. At that time the resaw was not working while all the men assigned to the machine were waiting for the carrier to come with more raw lumber, and to pick up the stacks of processed lumber. This "marking time" situation was not unusual. It frequently happened that these short waiting periods would occur. During this waiting period, the man working with the claimant was over near the conveyor talking with a workman assigned to that machine. The claimant walked over to the conveyor belt to a point where he could step up on the chain belt, which he did and proceeded to ride the belt back about 20 feet toward his work station. At or near the high part of the conveyor the claimant's foot caught in some manner under the belt and was crushed. Immediately after being injured, the claimant got off the conveyor, was laid down on the floor by a fellow workman, and covered with a blanket until the ambulance arrived which rushed him to the hospital. Subsequently claimant filed his claim for compensation. The employer resisted the claim asserting two defenses, willful negligence upon the part of the claimant, and "horseplay", asserting by these defenses that the injury did not "arise out of" the claimant's employment. However "horseplay" requires two or more participants, such "horseplay" not being present here. As to negligence in compensation cases, see R.C.M. 1947, section 92-201, subds. (1) and (3).

At the hearing before the Industrial Accident Board on October 26, 1956, oral testimony was given as to the circumstances surrounding the accident. It was brought out that no other employee actually witnessed the claimant step on to the conveyor and no one saw him on the conveyor until he had reached the point where his foot was crushed. The evidence

showed that no signs were posted at, on, or near the conveyor forbidding or warning workmen about "riding" the conveyor. Such signs were however posted near the conveyor after this accident. Testimony showed that at least one other workman had "ridden" this conveyor without any ill effects. After the hearing the Industrial Accident Board made findings and an order granting the injured employee compensation. They held that the accident "arose out of and in the course of his employment", and that although the workman was negligent his negligence was not of such nature that it would bar him from compensation under our Workmen's Compensation Act. See R.C.M. 1947, section 92-201, subds. (1) and (3).

The findings of the Industrial Accident Board, are clear, specific and in accordance with the evidence.

After denial of a petition for rehearing, the employer, J. Neils Lumber Company, appealed the order of the Industrial Accident Board to the district court.

The appeal to the district court was submitted on the cold record made before the Industrial Accident Board and one additional exhibit being "Montana's Minimum Safety Standards for Sawmill, Woodworking and Allied Industries."

From this record the district court found that the claimant's injury did not "arise out of" his employment, reversed the Industrial Accident Board's findings and order, and denied the claim for compensation. It is from this order that claimant appeals. The district court in its order based its denial solely on its finding that the injury did not "arise out of" claimant's employment.

The defense of "wilfull negligence" was not a ground for the district court's decision and is not at issue here, nor would it be in any event since the record on this appeal contains no evidence at all that this employee was wilfully negligent. To assume that the claimant deliberately, intentionally or wilfully injured himself is unthinkable and is not supported by the record in any particular. See Chancellor v. Hines Motor Sup-

ply Co., 104 Mont. 603, 69 Pac. (2d) 764. It is the unexpected, unintentional effect of the fortuitous event, that is covered by the compensation law, regardless of how negligent or inadvisable one's conduct may be, provided that there is no intention on the part of the employee to injure himself or another. See Rathbun v. Tabor Tank Lines, Inc., 129 Mont. 121, 283 Pac. (2d) 966; Glens Falls Indemnity Co. v. Henderson, 212 F. (2d) 617, 618 (5th Cir. 1954).

The district court based its decision entirely upon its finding that the accident did not "arise out of" the employment. The Industrial Accident Board found that the claimant "was injured in an accident arising out of and in the course of his employment by J. Neils Lumber Company at Libby, Montana, on June 29, 1956." The finding of the Board that the injury "arose out of" the employment was reversed by the district court, but the finding of the Board that the injury was incurred "in the course" of the claimant's employment was not disturbed. The claimant being injured "in the course" of his employment, the question presented here is did the claimant suffer an injury "arising out of" his employment. This court has the cold record before it as did the district court and therefore is in as advantageous a position as the district court was to adjudge the matter. In Wirta v. North Butte Mining Co., 64 Mont. 279, 292, 210 Pac. 332, this court speaking of the Workmen's Compensation Act said:

"The terms 'arising out of' and 'in the course of' the employment are used conjunctively, and in order to satisfy the statute both conditions must concur. In the case of Wiggins v. Industrial Acc. Board, supra [54 Mont. 335, 170 Pac. 9, Ann. Cas. 1918E, 1164, L.R.A. 1918F, 932], this court, speaking through Mr. Justice Holloway, said: 'The words "out of" point to the origin or cause of the accident and are descriptive of the relation which the injury bears to the *employment.* * * * If, by reason of the nature of the employment itself or the particular conditions under which the employment is pursued, the

workman is exposed to a hazard peculiar to the employment under the circumstances, and injury results by reason of such exposure, then it may be said fairly that the injury arises out of the employment, or, stated in different terms, the workman must have been exposed by his employment to more than the normal risk to which the people of the community generally are subject, in order that his injury can be said to arise out of his employment.' "

The court in the Wirta case, at page 290, also defined "employment" saying:

"The word 'employment', as used in the Workmen's Compensation Act, does not have reference alone to actual manual, or physical labor, but *to the whole period of time or sphere* of activities, regardless of whether the employee is actually engaged in doing the thing he was employed to do." (Moyse v. Northern Pac. Ry. Co., supra [41 Mont. 272, 108 Pac. 1062]. Emphasis added.

Since the industrial accident incurred "in the course of" the claimant's employment, it follows that applying the aforementioned rules to this case it is obvious that the claimant was subjected to a risk and a hazard peculiar to this employment. Claimant was subjected to the actual risk which injured him. The risks inherent in this employment were not risks common to people generally. That the injury occurred "in the course of" the employment strengthens the presumption that it "arose out of" the employment. Moreover, where there is doubt it shall be resolved in favor of the injured workman or his dependent family. See Geary v. Anaconda Copper Min. Co., 120 Mont. 485, 188 Pac. (2d) 185; General Accident Fire & Life Assurance Corp. v. Donovan, 251 F. (2d) 915 (D.C. Cir. 1958); Hartford Accident & Indemnity Co. v. Cardillo, 112 Fed. 11 (D.C. Cir. 1940).

The district court, having upheld the Industrial Accident Board's ruling that the injury was incurred during the "course of" the employment, erred in holding that the injury incurred

by reason of the employee's exposure to a hazard peculiar to the employment did not "arise out" of employment.

We believe it is imperative however in this case that some-■ thing further should be added because of the district court's statements in its memorandum opinion. We do not agree that an injury to be compensable must arise out of some act that the employee was doing which was actually a part of his work that he was paid to do by the employer. Nor do we agree that such is the general rule nor the majority viewpoint in the United States, as a matter of fact the reverse is the general rule.

Further our necessarily required liberal rules in compensation cases do not in Geary v. Anaconda Copper Mining Co., supra, clearly define limits in compensation cases. In the Geary case, supra, this court cited with approval, Employers' Liability Assur. Corp. v. Industrial Acc. Com., 37 Cal. App. (2d) 567, 573, 99 Pac. (2d) 1089, which held:

"If the particular act is reasonably contemplated by the employment, injuries received while performing it arise out of the employment, and are compensable. In determining whether a particular act is reasonably contemplated by the employment the nature of the act, the nature of the employment, the custom and usage of a particular employment, the terms of the contract of employment, and perhaps other factors should be considered. Any reasonable doubt as to whether the act is contemplated by the employment, in view of this state's policy of liberal construction in favor of the employee, should be resolved in favor of the employee."

Reinert v. Ind. Acc. Bd., 46 Cal. (2d) 349, 294 Pac. (2d) 713, cited in the district court's memorandum is to the same effect that an injury is compensable if it results from an activity contemplated by the employment. The California court in that case allowed compensation to a claimant hurt while engaged in recreation even though the accident occurred in a location neither directly owned by nor under the control of the employer.

In the instant case we have a workman who was injured during a lull in his work. He had not left work, he had none to leave. His working station encompassed some 15 feet around one end of a resaw machine. He had proceeded some 15 feet away from this station. He was however keeping himself available to resume work when necessary, he was in fact returning toward his work station when injured. No unreasonable, contemplated act is shown here.

The fact that the mode of transportation utilized by the claimant to return to his work station was dangerous, as hindsight proves, did not as such remove him from the protection of the Workmen's Compensation Act. The test is whether the act could be reasonably contemplated. In Matter of Leonbruno v. Champlain Silk Mills, 229 N.Y. 470, 128 N.E. 711, 13 A.L.R. 522, Justice Cardoza said: ''Whatever men and boys will do, when gathered together in such surroundings, at all events if it is something reasonably to be expected, was one of the perils of his service. * * * The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life. The risks of such associations and conditions were risks of the employment.''

The legislature has directed and made it the duty of the courts to construe our Workmen's Compensation Act liberally. Yet we cannot, under the guise of liberal interpretation, disregard any plain provision of the statutes, yet as here when it is open to more than one interpretation or when there is a reasonable doubt as to whether the act of the employee could be or was contemplated by the employment it should be resolved in favor of the employee. See Geary v. Anaconda Copper Mining Co., supra; Tingey v. Ind. Acc. Com., 22 Cal. (2d) 636, 140 Pac. (2d) 410, 413.

An injury which occurs in the course of the employment ordinarily arises out of the employment, the injury is compensable, not because of the extent or particular character of

the hazard, but because it exists as one of the conditions of employment. See McCarthy v. Nutmeg Plumbing Supply Co., 20 Conn. Sup. 200, 130 A. (2d) 566. Where the workman is injured by being exposed by his employment to more than the normal risk to which the people of the community generally are subject, then it can be fairly said that the injury *arose out of employment.*

We hold this case is ruled by the exhaustive opinion of Mr. Justice Angstman in Geary v. Anaconda Mining Co., supra. An injured workman may not be denied compensation under our Workmen's Compensation Act by narrow and technical construction or interpretation of any of its provisions.

It cannot be said that the Industrial Accident Board is lacking in evidence to require a reversal thereof by the district court. See Puffin v. General Electric Co., 132 Conn. 279, 43 A. (2d) 746.

The same question was presented to the court in the case of Jordan v. Dixie Chevrolet, Inc., 218 S.C. 73, 61 S.E. (2d) 654, in which case, a garage mechanic, who had nothing to do for the time being, seated himself in a car on which another mechanic was working. While so seated he casually opened the glove compartment, and in going over the contents found a curious object with a pin in it. Investigating he pulled out the pin, the object was a tear gas bomb, its contents, so released, exploded damaging claimant's eyes. Compensation was awarded on the theory that to satisfy the natural curiosity in all humans is not a departure from the employment. The above-case cites many such cases from many jurisdictions. It appears that the rule is well-established and the weight of authority now authorizes recovery in such cases. 1 Larson, Workmen's Compensation Law, section 23.66.

Also the case of Bethlehem Steel Co. v. Parker, 64 F. Supp. 615, 618 (Dist. Ct. Md. 1946), illustrates such curiosity cases. This case arose under the Federal Longshoremen's Compensation Act, which requires, as ours, that the injury arise out of

employment. In this case, a girl working on the deck of a vessel, noticed an opening in the wall, she walked over sticking her head in the hole to see what was there just in time to be struck by the descending dumbwaiter. The Federal Court said "her action was not in any sense a striking or intentional departure from her duties but at most a slight and casual one occasioned apparently by not unnatural curiosity on her part to see something which attracted her in her usual environment arising in the course of her general duty to return to her work on the upper deck." See Rogers v. Allis Chalmers Mfg. Co., 85 Ohio App. 421, 88 N.E. (2d) 234, 235; Stroud v. Ind. Com., 2 Utah (2d) 270, 272 Pac. (2d) 187; Meigel v. Gen. Foods Corp., 156 N.Y.S. (2d) 420, 2 A. (2d) 945.

The evidence presented to the Industrial Accident Board ▇▇▇▇▇▇ shows that the action which resulted in injury to this claimant was one that could be reasonably contemplated by the employment taking into account the close proximity to each other of machines, the nature of the act, and the nature of the employment, and by the placing of warning signs, after the claimant's injury the employer tacitly acknowledged the same. We hold the injury arose out of as well as in the course of his employment.

The judgment of the district court is vacated, set aside and reversed, and the order of the Industrial Accident Board of the 26th day of November, 1956, is ordered reinstated and enforced.

It is so ordered.

MR. JUSTICES ADAIR, ANGSTMAN and HONORABLE W. R. FLACHSENHAR, District Judge, sitting in place of MR. CHIEF JUSTICE HARRISON, concur.