MRS. BERGELIOT NESS, THORWALD (TOM) NESS, FATAL, CLAIMANT AND APPELLANT, v. DIAMOND ASPHALT COMPANY, INC., EMPLOYER, AND INDUSTRIAL ACCIDENT BOARD, DEFENDANT AND RESPONDENT.

No. 10630

Submitted February 3, 1964. Decided June 11, 1964.

393 P.2d 43

D. J. Sias, Oscar Hendrickson (argued), Chinook, for appellant.

L. V. Harris (argued), Helena, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal by claimant Ness, hereinafter referred to as appellant, from a judgment of the district court of the twelfth judicial district affirming a ruling of the Industrial Accident Board. The Board had ruled that appellant was not entitled to workman's compensation by reason of the death of Thorwald Ness, husband of claimant.

Thorwald Ness was found dead in a lavatory on his employer's premises on January 8, 1958. The lavatory was a small room, about 5 feet long, 4 feet wide and 7 feet high. It was heated by live steam of around 280° temperature passing through a radiator. The room temperature was estimated as between 80° and 100°. Apparently Ness had completed attending to his comfort, had stood up, in order to reach the cord to flush the toilet, and collapsed. When discovered, Ness was up on one leg, resting on the other, with his face, neck and hands on the radiator. He had burns and some bruise marks on his neck, face, back of his hand and forehead.

Thorwald Ness, at the time of his death, was a 64-year-old male, who for approximately five years past had been, and was still, employed by the Diamond Asphalt Company as general maintenance man and laborer. Because of his advanced age and condition, his employer delegated the lighter tasks to him, allowing him to decide when he wanted to work and encouraged him to get other help if he had anything to do that

would require assistance. His regular work week consisted of eight-hour days and five days per week.

On the date of Ness's death, he had worked his regular eight hours, gone home for the evening meal and returned to work to clean the office areas.

The area immediately involved in the death of Ness consisted of three separate buildings: The office building approximately 50 feet north of the laboratory building and the boiler room building approximately 50 feet east of the laboratory building. The lavatory in which Ness died was located in the boiler room building. All of the buildings were located near ground level.

Early in the evening Ness was observed obtaining a bucket of water from the boiler room building. About an hour before Ness's body was discovered, Ness walked from the office building to the boiler room building via the laboratory building. The outside temperature was near zero.

As Ness passed through the laboratory building, he was observed by a fellow worker, one Kessner. Kessner noted that Ness didn't look good—that he was pale. They exchanged remarks and Ness stated that he didn't feel too good.

After Ness had been in the lavatory for a length of time Kessner and another worker checked the lavatory, found the door locked, looked through the ceiling and discovered Ness's body in the position previously described.

Ness's death was medically defined, by the examining doctor, as resulting from a myocardial infarction due to coronary thrombosis. No autopsy nor other medical examination were performed. Dr. Overy, an expert cardiologist who reviewed this case, reported there was the possibility that this myocardial infarction secondary to a coronary thrombosis followed a severe hemorrhage from a pre-existing duodenal ulcer.

There was no medical history of Ness having heart trouble although, by his own conclusion, his heart did bother him. He had been observed having intermittent spells of heavy breath-

ing. There was a history of high blood pressure and ulcer trouble for some years prior to his death.

No additional testimony was offered at the trial court from that taken at the Industrial Accident Board hearing and there appeared to be no conflicting testimony.

The trial court found as part of its findings of fact:

"IV. The evidence establishes that the deceased died of a myocardial infarction which was not caused by, nor induced by any exertion, or force imposed on him by his employment.

"The evidence fails to establish that heat in the premises where he was found dead caused or contributed to the myocardial infarction which resulted in his death.

"V. The preponderance of the evidence establishes that the death of the deceased, Thorwald (Tom) Ness was due to natural disease processes in his coronary arteries and was not in any way influenced or caused by the demands of his employment."

Claimant predicates her first two specifications of error on these findings of fact and alleges that they are without support in the evidence and are contrary to the creditable evidence in the records.

Claimant's third specification of error is: "That the evidence is not sufficient to justify the Findings of Fact, Conclusions of Law and Judgment nor any of them."

The fourth and final specification of error is: "That the Findings of Fact, Conclusions of Law and Judgment herein are contrary to the evidence of record and the law."

In litigation under the Workmen's Compensation Act, the Act is to be construed liberally and when in doubt, the doubt is to be resolved in favor of the employee. Richardson v. J. Neils Lumber Co., 136 Mont. 601, 341 P.2d 900; Gaffney v. Ind. Acc. Bd., 129 Mont. 394, 287 P.2d 256. However, in actions under the Workmen's Compensation Act we must affirm the findings of the Industrial Accident Board and of the district court if the evidence is sufficient to sustain such

findings, and in cases where no additional testimony is taken on the appeal to the district court the case comes to such court with the presumption that the Board has decided correctly. This is so even though some conflict in the evidence may exist. McKinzie v. Sandon, 141 Mont. 540, 380 P.2d 580; Dean v. Anaconda Co., 135 Mont. 13, 17, 335 P.2d 854.

A thorough and minute inspection of the record indicates a preponderance of evidence supporting both the Industrial Accident Board's ruling and the District Court's ruling. The testimony of the lay witnesses indicates that the deceased had looked pale or sickly earlier in the day of his death and that he had not visibly exerted himself in the course of his employment. Dr. Hitchens, the doctor who was called after Ness's body was discovered, reported that: "In my opinion there was no relationship between Mr. Ness's employment and the cause of his death." Answers of Dr. Overy to interrogatories relate that the deceased died, most likely, immediately upon standing up and turning to flush the toilet after attending to his comfort, not later while lying on the radiator. Dr. Overy further indicates that 25 percent of all individuals who have myocardial infarctions, die immediately; that the high temperature of the lavatory did not aggravate Ness's already existing physical condition; that if Ness was alive, but unconscious, at the time he collapsed because of a heart attack upon the heater, the steam heater would simply add an additional insult to the body; and he specifically stated: "The acute episode occurred *while at* work, rather than *as a result of* work."

True, Dr. Overy also stated: "Unfortunately, one can only suppose these facts [referring to the facts of death], and there is no way pathologically to be certain of this conclusion." Unfortunately, no autopsy or other medical examination was performed.

The science of medicine is not an exact science, for in most fact situations there is much left to conjecture in the prediction of how a human body reacts. But as inexact as medicine is, a

physician can generally predict, with a reasonable degree of certainty, what should or should not have happened.

Appellant predicates a portion of her argument on the probability that 75 percent of those who suffer myocardial infarctions recover and that any "doubt should be resolved in favor of the injured workman and his dependent family."

Dr. Overy stated that 25 percent of those who suffer from a myocardial infarction die immediately and that the heat from the radiator would not contribute to the already existing heart attack making it greater or more extensive. Thus, if Ness was alive when he collapsed on the radiator, more than likely he would not have died because of the heat from the radiator. There is no evidence that the heat or the radiator itself contributed in any way to his death.

As we stated, appellant predicates a portion of her argument on the outcome of cases under the Workmen's Compensation Act when the evidence is interpreted and doubt remains as to what actually occurred. We have referred to this character of "doubt" in Richardson v. J. Neils Lumber Co., supra, and Gaffney v. Ind. Acc. Bd., supra. Whenever physical ailments are involved, there is almost always some doubt present. We feel the doubt remaining after all the evidence had been considered should be construed for the workman or his family when the weight of evidence is in favor of the workman. This situation does not exist in the instant appeal. The instant 'doubt" is the created child of speculation or conjecture and the evidence will not support it as any existing "doubt" is to be construed in favor of the workman.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON and CASTLES concur.

MR. JUSTICE ADAIR dissenting:

In my opinion the workman, Thorwald Ness, died as the re-

sult of an industrial accident occurring at and in his employer's plant and place of business and while the workman was there performing, for his employer, the tasks and duties to which he had been assigned and that by reason thereof the workman's surviving widow, Mrs. Bergeliot Ness, is entitled to compensation by reason of the death of her husband so occasioned. In my opinion the ruling of the Industrial Accident Board and the judgment of the district court, both, should be reversed.

I therefore dissent to the majority opinion in this cause.