JUSTICE GRAY
delivered the Opinion of the Court.
Bruce Marcott appeals from the portion of the judgment entered by the Workers’ Compensation Court which denied his request for the statutory penalty and attorney fees. We affirm.
We address the following issues on appeal:
1. Does substantial evidence support the Workers’ Compensation Court’s finding that Louisiana Pacific Corporation’s denial of Marcott’s claim was reasonable?
2. Did the Workers’ Compensation Court err as a matter of law in refusing to apply “the Holton rule”?
FACTUAL AND PROCEDURAL BACKGROUND
Bruce Marcott worked for Louisiana Pacific Corporation (LP) as head mechanic at its Belgrade, Montana, plant. LP is self-insured under Plan No. 1 of the Montana Workers’ Compensation Act (the Act).
On February 17,1994, Marcott and another mechanic, Gene Quillen, were performing repairs on a disabled LP forklift. The job required them to use a second forklift to lift the cab off of the disabled one. Using the operative forklift, Marcott lifted the cab, then dismounted. After dismounting, Marcott was walking behind the forklift when he heard a loud snap and felt pain in his left calf.
Quillen transported Marcott to the LP plant office. When Quillen asked what had happened, Marcott responded that his leg had “gone out.” Matt Harris, Marcott’s supervisor, asked what had happened and whether Marcott had tripped, slipped, or been running. Marcott answered that he was “coming around the back [of the forklift] when it went out on me.” In responding to questions by other supervisory personnel and Dr. Robert Jackson, the attending physician at the *201 Gallatin Valley Family Clinic, Marcott indicated that he was just walking at the time of the injury. During his transport to the clinic and his subsequent examination by nine different doctors, Marcott did not inform anyone that he was doing anything other than walking. At the clinic, Dr. Jackson diagnosed Marcott’s injury as a torn muscle in his left calf.
LP personnel and safety director John Mikkelson, whose duties include advising LP whether workers’ compensation claims are compensable, examined information provided by supervisory personnel and medical records provided by Marcott’s physicians. Mikkelson also obtained legal advice regarding the compensability of an injury sustained while walking at work. After evaluating the information, Mikkelson notified Marcott by letter dated March 21, 1994, that LP was denying his claim. The letter also informed Marcott that LP would reevaluate his claim if he provided any additional information.
LP first learned of Marcott’s assertion that he was walking briskly and turning sharply at the time of his injury in a letter from Marcott’s counsel dated April 29,1994. In light of this information, LP personnel reviewed Marcott’s medical records, including information provided by another physician, Dr. David King. Dr. King indicated that Marcott’s injury was not caused by any unusual demands placed on Marcott by his employment. Mikkelson considered Dr. King’s information to be consistent with his legal understanding that the injury was not compensable. LP continued to deny liability for Marcott’s claim.
Marcott petitioned the Workers’ Compensation Court for a determination that his injury was compensable under the Act and that he was entitled to temporary total disability benefits. He also contended that LP was unreasonable in refusing to accept liability for his injury and sought the statutory penalty and attorney fees. LP responded, contending that factual and legal disputes regarding the compensability of Marcott’s injury required resolution by the court and that it had not unreasonably denied Marcott’s claim.
At trial, Marcott testified that his injury occurred while he was walking “pretty fast,” turning on his left leg and just coming down on his right foot. He admitted that he told his supervisors and attending physicians only that he was walking, but attributed the lack of further detail to the significant pain he was experiencing and the absence of follow-up questions by both LP and the physicians. Marcott also provided substantial medical evidence in support of his testimony regarding how the injury occurred. Dr. John Campbell, Mar *202 cott’s orthopedic surgeon, opined that it was more probable than not that an unusual strain caused Marcott’s injury. Dr. King, a family practitioner, testified that merely walking across a floor would not provide an adequate explanation for Marcott’s injury.
LP relied on Marcott’s original statements to LP personnel and his physicians regarding how the injury occurred and on June 1994, correspondence from Dr. King describing walking briskly and turning sharply as relatively benign activities. Dr. King also opined in the letter that, while Marcott’s injury occurred at work, it was “not specifically caused by any unusual demands placed on him by his employment.”
LP also relied on the testimony of Dr. Donald Harrell, an orthopedic surgeon it retained after denying Marcott’s claim and receiving Marcott’s “walking briskly and turning sharply” information. Dr. Harrell opined on direct examination that walking briskly while turning sharply places no unusual increase in stress on the calf structure. In Dr. Harrell’s view, the fact that the injury occurred at work was coincidental, because Marcott’s work activities placed him at no greater risk of injury than that faced by any individual of his age in normal daily life. On cross-examination, however, Dr. Harrell agreed that some unusual force generally is required to cause a muscular rupture and, therefore, that Marcott’s injury was an unusual result given his activity at the time of the injury.
The Workers’ Compensation Court concluded that Marcott’s injury was compensable. It also concluded, however, that Marcott was not entitled to the statutory penalty or attorney fees. Marcott appeals.
DISCUSSION
In addition to substantive workers’ compensation benefits, the Act authorizes a 20% increase in the full amount of benefits, and an award of attorney fees, when an insurer denies liability for a claim later adjudged compensable and the Workers’ Compensation Court determines that the insurer’s denial was unreasonable. Sections 39-71-2907 and 39-71-611, MCA. The penalty set forth in § 39-71-2907, MCA, was not intended to eliminate an insurer’s assertion of a legitimate defense to liability. Paulson v. Bozeman Deaconess Foundation Hosp. (1984), 207 Mont. 440, 444, 673 P.2d 1281, 1283 (citation omitted).
In this case, the Workers’ Compensation Court concluded that Marcott’s injury was compensable based on its determination that Marcott was walking rapidly and turning sharply when the injury *203 occurred; thus, according to the court, the injury was caused by an unusual strain under § 39-71-119(2)(a), MCA. This conclusion satisfies the threshold factor for an award of both the penalty and attorney fees against LP — denial of liability for a claim later adjudged compensable. The court found, however, that LP’s denial of Marcott’s claim was reasonable and, on that basis, declined to award Marcott the statutory penalty or attorney fees.
Marcott challenges the court’s “reasonableness” finding and each of the several bases on which the court relied for its finding. Reasonableness is a question of fact. Stordalen v. Ricci’s Food Farm (1993), 261 Mont. 256, 258, 862 P.2d 393, 394. We review the Workers’ Compensation Court’s findings of fact to determine whether they are supported by substantial evidence. Stordalen, 862 P.2d at 394.
It is important to note at the outset that neither the compensability of Marcott’s claim nor the correctness, as a matter of law, of LP’s legal interpretation regarding compensability is at issue here. The Workers’ Compensation Court found Marcott to be a credible witness and resolved a factual dispute over whether the injury occurred while he was merely walking or walking briskly and turning sharply in his favor. On that basis, the court determined that Marcott’s injury was caused by an unusual strain as contemplated by § 39-71-119(2), MCA, and, therefore, that the injury was compensable.
Only the Workers’ Compensation Court’s finding that LP’s denial of Marcott’s claim was reasonable is before us on appeal. We will address in turn each reason the court articulated for its reasonableness finding. Before doing so, however, we summarize LP’s overall position because of its importance in understanding our analysis of whether substantial evidence supports the Workers’ Compensation Court’s “reasonableness” finding.
Briefly stated, LP asserted that a factual dispute existed over whether Marcott was merely walking or walking quickly and turning sharply at the time of the injury and that the factual dispute, which arose more than two months after the injury, involved Marcott’s credibility. LP also contended that, if Marcott were merely walking at the time, his injury was not compensable because it did not arise out of Marcott’s employment as required by § 39-71-407, MCA.
1. Does substantial evidence support the Workers’ Compensation Court’s finding that LP’s denial of Marcott’s claim was reasonable? a. Factual dispute
The Workers’ Compensation Court determined that LP reasonably relied on the information in its possession when it initially denied *204 Marcott’s claim, and that LP’s continued denial was reasonable because, by that time, a ‘legitimate factual dispute existed as to whether claimant was simply walking or walking rapidly and turning sharply to his left.” The factual dispute related to Marcotfs credibility.
The record establishes that, following Marcott’s injury, the only information in LP’s possession which related to the circumstances surrounding the injury was that Marcott was just walking when his calf muscle ruptured. Several supervisory personnel interviewed Marcott and Quillen at different times regardingthe incident and the reported facts remained unchanged; LP also obtained Marcott’s medical records, which reinforced those facts. LP relied on this information in its initial denial of Marcott’s claim. Thus, we conclude that substantial credible evidence supports the Workers’ Compensation Court’s finding that LP’s reliance on this information at the time of the initial denial was reasonable.
The record also reflects that, more than one month after LP’s denial of the claim, LP received a letter from Marcott’s counsel. This letter asserted that Marcott was walking rapidly and turning sharply at the time of his injury; the letter was the first notice LP received that Marcott alleged anything other than that he was simply walking at the time of the injury. As noted above, LP’s legal interpretation hinged in large part on LP’s original understanding of the facts surrounding the injury; namely, that Marcott was merely walking. According to the record, LP’s receipt of the letter from Marcott’s counsel containing a different version of the facts regarding the injury resulted in LP’s continued denial of Marcott’s claim on two bases: that a factual dispute regarding the circumstances surrounding the injury existed which required resolution by the Workers’ Compensation Court; and that the factual dispute involved Marcott’s credibility, a related issue requiring resolution by the court.
Based on this record, we conclude that substantial evidence supports the Workers’ Compensation Court’s finding that LP’s denial of the claim based on the existence of a legitimate factual dispute was reasonable.
b. Legal interpretation
LP’s position was that a muscle rupture which occurred while a worker was merely walking at work did not arise out of his employment under § 39-71-407, MCA. The Workers’ Compensation Court determined that LP’s reliance on heart attack and other cases to defend against the compensability of a condition which arises spontaneously as a result of an ordinary activity people do on a daily basis *205 irrespective of work raised a colorable issue within the bounds of legitimate legal advocacy. In essence, this determination constituted a finding by the court that LP’s legal interpretation, based on the facts as originally reported, was not unreasonable.
In Hunter v. Gibson Products of Billings (1986), 224 Mont. 481, 485, 730 P.2d 1139, 1142, we clarified that, with regard to an insurer’s decision to contest compensability based on its interpretation of case law, the Workers’ Compensation Court’s reasonableness finding remains a question of fact subject to the substantial evidence standard of review. This clarification was consistent with our 1984 holding in Paulson that the statutory penalty contained in § 39-71-2907, MCA, was never intended to eliminate the assertion of a legitimate defense to liability. Paulson, 673 P.2d at 1283. It also was consistent with our conclusion in Holton v. F.H. Stoltze Land & Lumber Co. (1981), 195 Mont. 263, 269, 637 P.2d 10, 14, that the existence of a genuine doubt, from a legal standpoint, that any liability exists constitutes a legitimate excuse for denial of a claim or delay in making payments.
Thus, as a general rule, where a court of competent jurisdiction has clearly decided an issue regarding compensability in advance of an insurer’s decision to contest compensability, the clear applicability of the earlier decision constitutes substantial evidence supporting a finding by the Workers’ Compensation Court that the contest over compensability is unreasonable. See Hunter, 730 P.2d at 1142. Conversely, where the issue upon which an insurer bases its legal interpretation has not been clearly decided, the lack of clear decision may constitute substantial evidence supporting a finding by the Workers’ Compensation Court that the insurer’s legal interpretation is not unreasonable. Therefore, we determine here only whether the compensability of an injury sustained while a claimant is merely walking at work has been clearly decided.
Among this Court’s cases upon which LP relied in contesting liability and compensability were Ness v. Diamond Asphalt Co., Inc. (1964), 143 Mont. 560, 393 P.2d 43; Dumont v. Wickens Bros. Construction Co. (1979), 183 Mont. 190, 598 P.2d 1099; and Wise v. Perkins (1983), 202 Mont. 157, 656 P.2d 816. We address each case in turn.
In Ness, the decedent worked as a general maintenance man and laborer and died as the result of a myocardial infarction which occurred at his workplace. Ness, 393 P.2d at 44. The issue before us was whether the evidence supported the district court’s finding that the decedent’s myocardial infarction was not in any way caused or influenced by the demands of his employment. The record established *206 that the decedent had no history of heart disease and that he had not visibly exerted himself during the course of his employment on the day he died. Ness, 393 P.2d at 44. The record also contained a physician’s opinion that there was no relationship between the decedent’s employment and the cause of his death, as well as the statement that the episode “occurred while at work, rather than as a result of work.” Ness, 393 P.2d at 45. We determined that the record supported the court’s finding and affirmed the judgment of the court and the Industrial Accident Board that the decedent’s widow was not entitled to workers’ compensation death benefits. Ness, 393 P.2d at 45.
In Dumont, we addressed the 1967 amendment to the statutory definition of injury — hich required that the injury be a tangible happening of a traumatic nature “from an unexpected cause, or unusual strain” — and applied it to a case involving an employee who died as the result of a heart attack occurring at his job site. Dumont, 598 P.2d at 1106-09. The decedent had a history of arteriosclerosis, but his widow attempted to demonstrate that the death was compensable because the decedent was subjected to unusual strain by his employment. Dumont, 598 P.2d at 1101. The widow’s medical witness ruled out any possible causal connection between the death and work-related events on or preceding the date of decedent’s death. Dumont, 598 P.2d at 1108. We determined that the record failed “to disclose anything unusual that occurred to the deceased” in relation to his work. Dumont, 598 P.2d at 1108. Based on the absence of any work-related unusual strain or unexpected cause resulting in the decedent’s heart attack, we affirmed the Workers’ Compensation Court’s judgment denying workers’ compensation death benefits. Dumont, 598 P.2d at 1109.
LP analogizes Ness and Dumont to the present case by pointing out that here, as in those cases, the episode occurred at work but, at least according to the facts Marcott first reported, was not caused by and did not result from the work. It observes that, in those cases, we required that the “unexpected cause/unusual strain” element be met and, in addition, that we implicitly recognized the validity of its argument that the injury must be work-related; that is, that the injury must “arise out of’ the work. In this regard, LP also observes that it was entitled to rely on Dr. Harrell’s pretrial and direct examination medical opinions that Marcott’s work activities at the time of the injury did not increase his risk of injury and that walking briskly while turning sharply did not place an unusual increase in stress on the calf structure.
*207 In deciding to contest liability in this case based on its interpretation that Marcott’s injury was not compensable, LP also relied on the inapplicability of our decision in Wise. In Wise, the claimant usually worked as a custodian and bartender, putting in work days of around eight to twelve and one-half hours each. Over the period of a week during which all responsibility for operation of the bar unexpectedly fell on her, she worked approximately fourteen to eighteen hours per day, standing most of the time. On one or more occasions, the claimant was unable to sit at all during such a day and, indeed, she seldom had the opportunity to be off her feet at all during the week. Wise, 656 P.2d at 817. By the end of the week, she was experiencing swelling and pain in her legs and feet; her condition ultimately was diagnosed as thrombophlebitis of both legs and she sought workers’ compensation benefits. Wise, 656 P.2d at 817.
The employer in Wise argued, among other things, that the claimant’s phlebitis was not an injury under § 39-71-119(1), MCA, which, at that time, defined injury as a “tangible happening of a traumatic nature from an unexpected cause or unusual strain” which results in physical harm. Wise, 656 P.2d at 819-20. The Workers’ Compensation Court determined that the work week at issue constituted a tangible happening of a traumatic nature from an unusual strain. Based on the evidence establishing the claimant’s excessive work schedule during that time, we agreed and affirmed the court’s award of compensation benefits. Wise, 656 P.2d at 820.
LP points out that the compensability determination in Wise was premised on evidence of the claimant’s excessive work hours on her feet and was not based on a determination that merely walking or standing at work was sufficient to constitute a work-related tangible happening from an unusual strain. Thus, according to LP, the issue of whether an injury sustained while merely walking at work is compensable has not been decided by this Court and, at least by implication from Wise, arguably could be decided in its favor.
Read as a whole and on a stand-alone basis, these cases appear to constitute sufficient evidence to support the Workers’ Compensation Court’s finding that LP’s legal interpretation was not unreasonable in light of the facts as originally reported. Marcott addresses the cases on which LP relies only briefly, and this summary approach is not altogether inappropriate. As discussed above, the issue before us is not whether those cases compel a legal conclusion that Marcott’s injury is not compensable. The issue is whether those cases provided LP with a reasonable basis upon which to contest liability; stated *208 differently, the issue is whether LP’s liability for an injury sustained while an employee was walking at work has been so clearly decided as to negate any genuine doubt from a legal standpoint and render unreasonable the defense LP asserted to liability. See Hunter, 730 P.2d at 1142; Paulson, 673 P.2d at 1283; Holton, 637 P.2d at 14.
In this regard, Marcott primarily relies on Robins v. Ogle (1971), 157 Mont. 328, 485 P.2d 692, and Shepard v. Midland Foods, Inc. (1983), 205 Mont. 146, 666 P.2d 758, under which he claims his ruptured calf muscle is absolutely compensable as an unexpected effect meeting the “unusual strain” requirement of § 39-71-119(2)(a), MCA. On this basis, he contends that the Workers’ Compensation Court’s finding that LP’s legal interpretation was reasonable is not supported by substantial evidence.
In Robins, we addressed whether a herniated disc sustained by the claimant when lifting a pail of water at work met the 1967 definition of injury under the Act; more precisely, the issue was whether the claimant’s condition occurred as the result of an “unusual strain” pursuant to § 92-418, R.C.M. (1947). “Injury” was defined at that time as a tangible happening of a traumatic nature from an unexpected cause, or unusual strain. Robins, 485 P.2d at 693.
The claimant in Robins had been mopping the floor at the time her disc herniated, and we observed that the strain she suffered was not unusual from the perspective of the manner in which the mopping was being done. Robins, 485 P.2d at 694. The record reflected, however, that she had “picked [the bucket] up wrong” and “twisted [her] back” while moving the bucket and removing the mop. Robins, 485 P.2d at 694. Noting that a herniated disc resulting from picking up a bucket in the wrong manner and turning to pick up the mop constituted a strain which was unusual from the standpoint of effect, we stated that “[a]n unusual result from a work-related strain qualifies as ‘an unusual strain’ under section 92-418, R.C.M. 1947.” Robins, 485 P.2d at 695.
In Shepard, we addressed whether an aggravation of a pre-existing condition resulting primarily from a claimant’s routine heavy work could result in a compensable injury under the same statutory definition interpreted in Robins. The claimant had performed extremely heavy work for his employer over a period of many years; he slipped and fell in 1980, twisting his left knee and striking it sharply on the edge of a step, and subsequently favored his right knee in order to take the pressure off his injured left knee. Shepard, 666 P.2d at 760. According to the medical evidence, the claimant’s routine heavy work *209 aggravated Ms underlying degenerative knee condition, even absent the 1980 fall and its aftermath. Shepard, 666 P.2d at 760.
We noted that a series of minor work-related traumas which sufficiently aggravate a pre-existing condition to result in disability could lead to an injury compensable under the Act, and reiterated our conclusion from earlier cases that “unusual strain” can apply to an unexpected resulting injury even though the effort involved was not unusual for the particular job. Shepard, 666 P.2d at 761 (citations omitted). On the basis of undisputed and substantial evidence of work-related injury aggravating a pre-existmg condition, and the absence of any evidence that the claimant did heavy work outside of his employment, we concluded that the Workers’ Compensation Court’s determination that the claimant’s knees had deteriorated for other than work-related reasons was not supported by substantial evidence. Shepard, 666 P.2d at 762-63.
We observe that Robins and Shepard were decided in 1971 and 1983, respectively. Dumont and Wise, upon wMch LP relied for its legal interpretation, were decided in 1979 and 1983, respectively. None of the cases discusses, much less distingmshes or overrules, any of the others.
We agree with Marcott that Robins clearly states the law regarding “unusual strain” as that term is used in the Act. Robins did not, however, address a specific question regarding the work-related nature of the activity at issue or, as raised m this case, whether the injury “arose out of’ Marcott’s employment under § 39-71-407, MCA.
In the heart attack cases relied on by LP, on the other hand, we concluded that the conditions underlying the workers’ compensation claims were not caused by work-related activity and were not compensable. Thus, those cases are distinguishable from Robins with regard to the specific legal interpretation and issue advanced here 4by LP.
On that basis, we conclude that the compensability of Marcott’s rnjury had not been so clearly decided as to negate any genuine doubt from a legal standpoint. We hold that substantial evidence supports the Workers’ Compensation Court’s finding that LP’s legal interpretation regarding the compensability of Marcott’s injury was not unreasonable.
c. Investigation
Marcott’s final assertion of error with regard to the Workers’ Compensation Court’s reasonableness finding relates to LP’s investigation of Marcott’s claim. In its oral decision at the end of the hearing, *210 the court rejected Marcott’s contentions that LP’s investigation was so inadequate as to be unreasonable. The court found that LP reasonably relied on the information it received both from Marcott and from his medical records in deciding to deny Marcott’s claim.
It is undisputed that insurers have an affirmative duty to investigate workers’ compensation claims.
[A]n insurer has a duty to make at least a minimal investigation of a claim’s validity in light of the relevant statutes. Absent such [an] investigation, denial of a claim for benefits is unreasonable.
Stevens v. State Comp. Mut. Ins. Fund (1994), 268 Mont. 460, 467, 886 P.2d 962, 966, overruled on other grounds by Kloepfer v. Lumbermens Mut. Cas. Co. (1995), 272 Mont. 78, 899 P.2d 1081 (quoting Lovell v. State Comp. Mut. Ins. Fund (1993), 260 Mont. 279, 288, 860 P.2d 95, 101).
Here, the record reflects that LP interviewed Marcott and Quillen, the only witness to the incident; both stated that Marcott was just walking when the injury occurred. LP also obtained Marcott’s medical reports, which contained Marcott’s statements to his doctors to the same effect. These reports included, for example, Dr. Jackson’s statement that “[p]atient was walking across a level floor and felt an immediate sharp pain ... he was not aware of striking any objects or any mishaps.” Similarly, Dr. Campbell reported that Marcott was a "... male ... while at work, taking a step and feeling something pop in the back of his left calf ... .” Finally, LP sought legal advice on the compensability and liability issues vis-a-vis these reported facts. Based on this evidence and evaluation of the claim, LP denied liability.
Marcott argues that LP’s investigation was inadequate. He contends, among other things, that LP could not reasonably rely on Marcott’s initial statements because Marcott was in agonizing pain at the time they were made; that LP was required to ask Marcott and Quillen whether Marcott was walking rapidly or turning to his left when his calf muscle ruptured; and that, faced with a purported inconsistency in Dr. Jackson’s report between Marcott’s related history regarding the injury and the doctor’s affirmative response to a question on the form report inquiring whether the patient’s condition is “due to a work-related accident,” LP had an obligation to contact Dr. Jackson to ascertain whether any additional or different history had been received from Marcott and why the form report indicated that the condition was due to a work-related accident. Marcott relies *211 on Stevens in support of his argument that LP’s investigation was inadequate and unreasonable.
In Stevens, the State Fund accepted liability for the claimant’s accident and began paying benefits. Thereafter, it received an anonymous tip that the claimant was working; the tip and subsequent statements regarding the invalidity of the workers’ compensation claim originated with the claimant’s former spouse. Stevens, 886 P.2d at 963-64. The State Fund arranged for two separate investigations and received reports from both investigators. Thereafter, the State Fund terminated the claimant’s benefits based solely on its knowledge that a witness was available to testify against the claimant’s version of the injury. It did not read the investigative reports it had commissioned, evaluate the “accuser’s” statements, even though she was known to be the claimant’s former spouse, or attempt to validate the accusations through interviews with either the claimant or other witnesses; nor did the State Fund opt to petition the Workers’ Compensation Court to terminate benefits. Stevens, 886 P.2d at 966-67.
Under these circumstances, we concluded that the State Fund had failed to make “a reasoned review of all available evidence in the case ... followed by an impartial evaluation of the evidence reviewed.” Stevens, 886 P.2d at 968. We also concluded that this failure to make even a minimal review and evaluation after the investigations were completed — and prior to terminating benefits — rose to the level of unreasonable conduct; thus, we held that substantial evidence did not support the Workers’ Compensation Court’s determination that the State Fund’s termination of benefits was reasonable. Stevens, 886 P.2d at 968.
Stevens has no application here. That case involved an insurer’s duty in investigating and evaluating information upon which it ultimately terminated benefits already being paid, and its failure to even review investigative materials it had commissioned. Stevens does not support Marcott’s contention that, in evaluating liability and compensability issues, an insurer can rely on neither the claimant’s own statements regarding the circumstances surrounding his injury nor reports from his doctors containing the same description of how the injury occurred. It also does not support the theory that an insurer has an affirmative duty to ask the claimant specific follow-up questions to uncover facts additional to, or different from, those provided by the claimant in an effort to establish facts upon which the compensability of the injury might be more clear.
*212 In the final analysis, it remains the claimant’s burden to prove the compensability of his injury by a preponderance of the evidence. See Walker v. United Parcel Service (1993), 262 Mont. 450, 454, 865 P.2d 1113, 1116. While we reaffirm our cases imposing an affirmative duty on insurers to reasonably investigate and evaluate a claim, we decline to expand that duty by imposing a requirement that an insurer must attempt to build a case for the claimant by discounting the claimant’s own statements to the employer and to his doctors.
We conclude that the record contains substantial evidence to support the Workers’ Compensation Court’s finding that LP reasonably relied on the information provided by Marcott. We further conclude that the Workers’ Compensation Court’s implicit finding that LP’s investigation was not unreasonable pursuant to Stevens is supported by substantial evidence.
2. Did the Workers’ Compensation Court err as a matter of law in refusing to apply “the Holton rule”?
The Workers’ Compensation Court concluded that, even though several of Marcott’s physicians noted in their reports that his injury was work-related, these opinions were not conclusive regarding the compensability of the injury. Marcott contends that the court’s legal interpretation was incorrect because he is entitled to the statutory penalty pursuant to our decision in Holton as a matter of law. We review the Workers’ Compensation Court’s conclusions of law to determine whether they are correct. Stordalen, 862 P.2d at 394.
Marcott relies on the following language from Holton:
The triggering event for the purpose of awarding penalties for unreasonable delay or refusal to pay compensation is the insurer’s receipt of medical verification of a compensable injury. Unless such verification contradicts other evidence sufficient to make the verification inherently incredible, the insurer’s duty to pay commences and failure to pay (or deny a claim) will expose the carrier to the possibility of penalties after thirty days.
Holton, 637 P.2d at 13 (citations omitted). Marcott argues that, pursuant to this language, LP’s legal duty to pay him workers’ compensation benefits began as soon as it received an indication from one of his doctors that his injury was work-related. His position, however, does not take into account either the facts upon which Holton was decided or the totality of our decision in that case.
In Holton, the claimant was injured at work in late 1972, required — and recuperated from — surgery, and returned to work. He *213 left Stoltze’s employ for less strenuous work at better pay, but was laid off soon thereafter. He ranched for a time, following which he managed a bar. He continued to experience pain and stiffness resulting from the work-related injury. Holton, 637 P.2d at 11.
The insurer was notified in early 1974 that the claimant’s physician gave him a 5% total body impairment rating. Thereafter, the insurer’s physician rendered a 10% impairment rating and the insurer offered to settle on the basis of that rating. The claimant made a counteroffer and heard nothing more from the insurer for more than four years; no benefits were paid during that time. Other issues aside, the Workers’ Compensation Court ultimately determined that the claimant suffered a 40% disability, but denied imposition of the statutory penalty. Holton, 637 P.2d at 11-13.
The claimant argued on appeal that, under the facts of his case, he was entitled to the § 39-71-2907, MCA, penalty. We discussed both the statute and case law in stating that “the triggering event” for imposition of the penalty for unreasonable delay or refusal to pay “is the insurer’s receipt of medical verification of a compensable injury.” Holton, 637 P.2d at 13. On receipt of such medical verification and absent other evidence rending the verification inherently incredible, the insurer’s duty to pay begins and failure to pay exposes the insurer to the “possibility of penalties.” Holton, 637 P.2d at 13 (citations omitted). Contrary to Marcott’s arguments here, these statements did not resolve the penalty issue in Holton; nor did they become a controlling rule of law that receipt of medical verification of a compensable injury, followed by nonpayment of benefits, automatically results in the imposition of the penalty as a matter of law. They merely set the stage for our resolution of the case.
The facts on which our decision in Holton was based were that both the claimant’s physician and the insurer’s physician had rendered impairment ratings and, after an initial settlement offer was made and rejected, the insurer took no action whatsoever for more than four years. Holton, 637 P.2d at 13. We observed that § 39-71-2907, MCA, does not provide the insurer the right to delay the payment of any compensation until a formal hearing; indeed, the converse is true: the insurer has a duty to promptly pay any undisputed compensation. Holton, 637 P.2d at 13. “[T]he only legitimate excuse for delay of compensation is the existence of genuine doubt, from a medical or legal standpoint, that any liability exists.” Holton, 637 P.2d at 14 (citations omitted). Notwithstanding the dispute as to the total compensation due, both parties in Holton agreed as of March *214 31, 1975, that at least a 10% disability claim should be paid; the insurer made no payments of benefits. On the basis of those undisputed facts, we determined that the insurer had “no legitimate excuse for delay in paying the 10% disability claim prior to the hearing. The penalty for unreasonable delay, as provided by section 39-71-2907, MCA, is justified.” Holton, 637 P.2d at 14.
It is clear that the facts of Marcott’s case are not analogous to those in Holton. Here, a factual dispute existed concerning the events surrounding the injury and, on the basis of the facts as Marcott originally reported them, LP relied on a legal interpretation under which Marcott’s claim was not compensable; the Workers’ Compensation Court determined that the legal interpretation was not unreasonable. We stated in Holton that the existence of genuine doubt over liability — from either a medical or a legal standpoint — constitutes a legitimate reason to delay or refuse payment of workers’ compensation benefits. Holton, 637 P.2d at 14. Indeed, as set forth above, Holton is only one case in a line of cases clarifying that the statutory penalty in § 39-71-2907, MCA, was never intended to preclude an insurer’s assertion of a legitimate defense to liability. See, e.g., Hunter, 730 P.2d at 1142; Paulson, 673 P.2d at 1283.
Nothing in Holton requires immediate payment of benefits where disputed legitimate factual or legal issues relating to compensability and liability exist. We hold, therefore, that the Workers’ Compensation Court did not err as a matter of law in refusing to apply Holton.
Affirmed.
CHIEF JUSTICE TURNAGE, JUSTICES NELSON and DISTRICT JUDGE GOFF, sitting for Retired JUSTICE WEBER concur.