JUSTICE RICE
concurring in part and dissenting in part.
¶40 I concur with the result the Court reaches under denominated Issue One. Although the evidence was contradictory, the conclusions entered by the WCC with regard to the cause of Narum’s hip replacement were supported by substantial evidence. However, it is noteworthy that the WCC, in reaching its conclusions, had to discount the opinion of Dr. Willis, Narum’s treating physician, by determining that Dr. Willis had “misapprehended” Narum’s condition. This, to say the least, is a rare conclusion within worker’s compensation jurisprudence, which usually gives substantial weight to and relies upon the treating physician’s opinions. See Nielson v. State Compen. Ins. Fund, 2003 MT 95, ¶ 39, 315 Mont. 194, 69 P.3d 1136 (“As a general rule, testimony of a treating physician is entitled to greater evidentiary weight than that of other doctors.”). Though I agree with the WCC’s conclusions with regard to causation of Narum’s hip replacement, I believe that the WCC’s discounting of Dr. Willis’s *265 opinion bears consideration in the resolution of the attorney fee and penalty issues.
¶41 Concluding that Narum met his evidentiary burden of proof to establish causation, the Court states it will not address Liberty’s first issue-whether the WCC erred by concluding that causation for the hip replacement was “no longer an issue in this case” under the parties’ settlement agreement. However, though this issue may not be necessary to resolve Narum’s entitlement to reimbursement, the WCC’s determination that causation was no longer an issue was also the reason it penalized Liberty for contesting the expense. The WCC reasoned that “Respondent denied payment ... even though medical benefits were reserved and the possibility of hip replacement surgery was specifically identified in the settlement agreement. Respondent has provided this Court with no persuasive explanation as to how it could justify stopping payment for the ongoing treatment of Petitioner’s hip condition for which it had accepted liability.” (Emphasis in original.) The answer to this question would be that, though accepting liability for the injury, Liberty believed it had a legitimate causation defense to future medical claims and had not agreed to a blanket acceptance of all such costs. Thus, I believe a review of the causation issue is likewise important to resolution of the attorney fee and penalty matters.
¶42 As it turns out, so does this Court. In affirming the WCC’s imposition of attorney fees and the 20% penalty, the Court turns back on its initial decision not to address the causation issue, reasoning that Liberty’s reliance upon Dr. Willis’s opinion “does not explain why it agreed originally to pay for Narum’s hip surgery in the settlement, or why it suddenly stopped paying Narum benefits for injections for his hip after initially accepting liability for Narum’s condition.” Opinion, ¶ 35. The Court here is actually affirming the WCC’s determination that causation no longer remained an issue because liability had been accepted.
¶43 I disagree with the WCC’s conclusion that causation for Narum’s hip replacement was “no longer an issue” under the settlement agreement. Of course, if that were the case, there would be no need to analyze the evidence to determine if Naurm’s work injury had caused the surgery-the issue would be settled as a matter of law. The Petition for Settlement, which constitutes the settlement agreement approved by the Department of Labor and Industry, provided that Narum was reserving further medical and hospital benefits, and then stated as follows:
*266 The claimant understands that by entering into a settlement, both the insurer and the claimant agree to assume the risk that the condition of the claimant, as indicated by reasonable investigation to date, may be other than it appears or may change in the future. Specifically, the parties acknowledge that the claimant may require a total hip replacement in the future. Additionally, the parties ackknowledge (sic) that based on claimant’s age and physical restrictions, his return to work poetnetial (sic) is and will continue to be limited. The claimant ... further understands that if this Petition is approved, this insurer is forever released from payment of compensation under the Worker’s Compensation and Occupational Disease acts for injuries or diseases specified above. The claimant understands this Petition represents a settlement and, if approved, may not be reopened by the Department. [Emphasis in original.]
As it states, this language is intended to make sure that the parties, in entering a final settlement which the Department may not reopen, understood that Narum’s condition may “change in the future.” That understanding holds a consequence for both sides: if Narum gets worse, Narum will have settled for too little; if Narum improves, Liberty will have paid too much. Either way, the agreement explains that the party suffering the financial loss would have no recourse. This language is directed toward disability compensation issues, and is bolded in the original agreement to ensure the claimant understands he will be ineligible for future disability compensation payments if he gets worse, including, as it explains, suffering from a limited work potential or requiring a total hip replacement. This language does not expand upon Liberty’s responsibility for future medical costs-which Narum clearly reserved in the agreement-and does not provide that Liberty is waiving the right to contest causation for those future costs. Further, it does not say, as the Court offers, that Liberty “agreed originally to pay for Narum’s hip surgery in the settlement.” Opinion, ¶ 35. As Liberty notes, the statutory requirement that Narum demonstrate his entitlement to medical benefits by a preponderance of the evidence remained applicable. Sections 39-71-407 and 704, MCA (2001). The WCC reasoned that Liberty “cannot accept liability for a claim, settle the claim, and then un-accept the claim at a later date because it has changed its mind about whether it should have accepted *267 liability in the first place.” I do not believe Liberty did so.[1]
¶44 Liberty alternatively argues that if the agreement is deemed to be ambiguous, this case should be remanded for further proceedings in which extrinsic evidence could be considered. However, we need not reach a final conclusion about the agreement’s interpretation for purposes of the attorney fee and penalty issues. From the agreement’s plain language, discussed above, I believe Liberty had a legitimate legal position that it had not waived the right to contest causation for future medical costs, including the hip replacement. Further, I believe that Liberty had a legitimate medical premise for questioning whether Narum’s hip replacement was related to his work accident, by the opinion of Narum’s treating physician, Dr. Willis.
¶45 We have explained that the statutory penalty “was never intended to eliminate the assertion of a legitimate defense to liability” and that “the existence of a genuine doubt, from a legal standpoint, that any liability exists constitutes a legitimate excuse for denial of a claim or delay in making payments.” Marcott v. Louisiana Pacific Corp., 275 Mont. 197, 205, 911 P.2d 1129, 1134 (1996). I believe the WCC’s imposition of attorney fees and 20% penalty was premised upon incorrect legal assumptions and was not reasonable. I would reverse under Issues Two and Three.

 The Department of Labor & Industry’s letter to Liberty notifying them that the Department had approved the settlement agreement stated that “[t]he insurer will, where applicable, make payment.”